**LAW OFFICES OF RONALD A. MARRON, APLC**
RONALD A. MARRON (175650)
*ron@consumersadvocates.com*
MAGGIE K. REALIN (263639)
*maggie@consumersadvocates.com*
SKYE RESENDES (278511)
*skye@consumersadvocates.com*
3636 4th Street, Suite 202
San Diego, CA 92103
Telephone:    (619) 696-9006
Facsimile:    (619) 564-6665

Additional counsel appear on signature page

**THE WESTON FIRM**
GREGORY S. WESTON (239944)
*greg@westonfirm.com*
JACK FITZGERALD (257370)
*jack@westonfirm.com*
MELANIE PERSINGER (275432)
*mel@westonfirm.com*
COURTLAND CREEKMORE (182018)
*courtland@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone:    (619) 798-2006
Facsimile:    (480) 247-4553

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

KEVIN BRANCA, an individual, on behalf of himself and all others similarly situated,

     Plaintiff,

v.

IOVATE HEALTH SCIENCES USA, INC.; IOVATE HEALTH SCIENCES INC.; and IOVATE HEALTH SCIENCES GROUP INC., now known as KERR INVESTMENT HOLDING CORP.,

     Defendants.

CASE NO.    **'12 CV 1686 LAB WMC**

CLASS ACTION

**COMPLAINT FOR:**

1. **VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT [CIV. CODE § 1750, *et seq.*]; and**

2. **VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW [BUS. & PROF. CODE § 17200, *et seq.*]**

3. **VIOLATION OF CALIFORNIA FALSE ADVERTISING LAW [BUS. & PROF. CODE § 17500, *et seq.*]**

4. **VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT 15 [U.S.C. § 2301, *et seq.*]**

5. **BREACH OF EXPRESS WARRANTY**

6. **BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**

DEMAND FOR JURY TRIAL

COMPLAINT FOR VIOLATIONS OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT, CALIFORNIA UNFAIR COMPETITION LAW, CALIFORNIA FALSE ADVERTISING LAW, THE MAGNUSON-MOSS WARRANTY ACT, AND BREACH OF IMPLIED AND EXPRESS WARRANTIES

Plaintiff Kevin Branca ("Plaintiff"), by and through his attorneys of record, brings this action on behalf of himself, all others similarly situated, and the general public ("Plaintiff") against Defendants IOVATE HEALTH SCIENCES USA, INC.; and its parent companies, IOVATE HEALTH SCIENCES INC.; and IOVATE HEALTH SCIENCES GROUP INC., now known as KERR INVESTMENT HOLDING CORP., ("Iovate" or "Defendants"). Plaintiff alleges the following upon his own knowledge, or where there is no personal knowledge, upon information and belief and the investigation of his counsel:

**JURISDICTION AND VENUE**

1. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005, as a matter in controversy that exceeds the sum of $5,000,000.00, exclusive of costs and interest, and a class action where Plaintiff, a member of the class, is from a different state than Defendants. On information and belief, more than two-thirds of the members of the class are citizens of a state different from the Defendants. This Court also has original jurisdiction over the federal claim under the Magnuson-Moss Warranty Act pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

2. Personal jurisdiction derives from the fact that the Defendants conduct business within the State of California and within this judicial district.

3. Venue is proper within this district pursuant to 28 U.S.C. § 1391(b)(2) because many of the acts and transactions, including the purchases and sales giving rise to this action, occurred in this district and because Defendants:

    (i)    are authorized to conduct business in this district and have intentionally availed themselves of the laws and markets within this district through the promotion, marketing, distribution and sale of its products in this district;

    (ii)    do substantial business in this district;

    (iii)    advertise to consumers residing in this district; and

    (iv)    are subject to personal jurisdiction in this district.

/ / /

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

**PARTIES**

4.    On information and belief, at all times relevant to this matter Defendant Iovate Health Sciences USA, Inc. was a Delaware corporation with its principal place of business located in Oakville, Ontario, Canada.  At all times relevant herein, Defendants Iovate Health Sciences, Inc., Iovate Health Sciences Group, Inc., now known as Kerr Investment Holding Corp., were all corporations with their principal place of business in Oakville, Ontario, Canada.

5.    At all times relevant herein, Defendants advertised, marketed, distributed, and sold Hydroxycut to consumers in the United States, transacting business in this district and throughout the United States.

6.    At all times relevant to this matter, Plaintiff Kevin Branca resided, and continues to reside, in San Marcos, California.  Members of the putative Class reside in California and other states in the United States.

7.    During the Class period, Plaintiff Kevin Branca was exposed to and saw Defendants' claims about Hydroxycut Pro Clinical, which claimed, inter alia, that the product was an effective weight-loss supplement.  In approximately October 2011, Plaintiff purchased the product in reliance on those claims at a GNC on 6949 El Camino Real, Carlsbad, California, and suffered injury in fact as a result of Defendants' unfair competition as described herein.

8.    Plaintiff is informed and believes and thereon alleges that at all times herein mentioned each of the Defendants and Defendants' employees were the agents, servants and employees of each of the Defendants, acting within the purpose and scope of that agency and employment.

**INTRODUCTORY FACTS**

9.    This is a consumer protection class action lawsuit on behalf of purchasers of Hydroxycut Pro Clinical ("Hydroxycut" or the "Product"), which is marketed by the Defendants as a "clinically proven" formula that helps the consumer "Lose 7 times more weight." To support this, Defendants claim that a "key ingredient combination" make up a powerful weight loss formula. However, the Product is nothing more than a caffeine pill mixed with ingredients that are not clinically proven as effective treatments for weight loss or appetite suppression but sold for ten times the price of normally labeled

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

caffeine pills. In addition, the Product does not in fact work as advertised.

10. Defendants have spent tens of millions of dollars advertising and marketing Hydroxycut.

11. Defendants recently embarked on a new multimedia advertising campaign for Hydroxycut Pro Clinical that includes, inter alia, magazines, the Internet, point of sale displays, and statements on the Product's labels and packaging. Each form of advertisement brazenly touts the Product as "clinically proven" for weight loss.

12. Specifically, Hydroxycut's advertising represents that the Product is:

. . . the latest weight loss innovation from the *Hydroxycut* brand, an industry leader in weight loss supplements with a commitment to excellence that has stood for over 16 years. . . . ***This powerful formula can help you lose weight and reduce BMI as part of your diet and exercise plan.*** . . . Losing weight can be an incredible experience, and it's one you can look forward to with help from Pro Clinical Hydroxycut!

13. Each of these statements is false and/or misleading because the Product is not effective in achieving the advertised benefits.

14. Defendants' marketing and promotion of Hydroxycut Pro Clinical is supported by false and misleading claims containing material omissions concerning the Product's efficacy and supposed mechanism of action.  Additionally, the clinical studies referenced are junk science.

15. Plaintiff brings this action on behalf of himself and all other similarly situated consumers in the United States, to halt the dissemination of Defendants' deceptive and false advertising message about Hydroxycut, and to correct the false and misleading perception it has created in the minds of consumers.  Plaintiff alleges violations of the Consumer Legal Remedies Act (Cal. Civ. Code § 1750, *et seq.*, "CLRA"), Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*), False Advertising Law (Cal. Bus. & Prof. Code § 17500, *et seq.*), Magnuson-Moss Warranty Act, (15 U.S.C. §§ 2301, *et seq.*), breach of express warranty, and breach of implied warranty.

/ / /

/ / /

/ / /

/ / /

/ / /

**SPECIFIC FATCUAL ALLEGATIONS**

16.    Defendants have used and continue to use labeling, magazines, and the Internet, inter alia, to advertise that Hydroxycut is "Clinically Proven" to help consumers "Lose More Weight Than Dieting Alone" and "Significantly Reduce BMI." Defendants also have cited and continue to cite "Clinical Trials" purportedly proving that Hydroxycut ingredients provide "7x More Weight Lost" than dieting alone.

17.    Each of these statements, inter alia, are false and/or misleading because the Product is not effective in achieving the results advertised.

18.    The "Clinical Trials" referenced are junk science. Therefore, Defendants' marketing and promotion is misleading, false, and contains material omissions concerning the Product's efficacy and supposed mechanism of action because the Product is not "Clinically Proven" to achieve its advertised benefits.

### The Latest Hydroxycut Formulation: the Ingredients

19.    Defendants, on their website, in magazine articles, in television commercials, and on Product labels, inter alia, reference "Clinical Trials" purportedly proving that a "key ingredient combination" in the new Hydroxycut formula is an effective tool in weight-loss.

20.    The "key ingredient combination" in the Product is a formula trademarked as "Hydroxyprovia," which consists of unspecified proportions of lady's mantle extract (*alchemilla vulgaris*), wild olive extract (*olea europaea*), komijn extract (*cuminum cyminum*), and wild mint extract (*mentha longifolia*). The formula is also referred to as the "Weight Loss Blend."

21.    Hydroxycut also contains other herbal ingredients in a blend copyrighted as "Hydroxagen" which consists of unspecified proportions of acerola concentrate, goji extract, blueberry, pomegranate, and bilberry extract.

22.    Hydroxycut's only other active ingredient is a large dose of caffeine, which the FDA has determined is not a safe or effective treatment for weight control.  While caffeine may "Increase Energy," the FDA has in fact determined that "there are inadequate data to establish the general recognition of the safety and effectiveness" of caffeine for the specified use of weight control. *See* 21

C.F.R. § 310.545(20).

***The Latest Hydroxycut Formulation: not "Clinically Proven"***

23.    The studies purportedly providing "clinical" proof are junk science. Defendants'

representations concerning these studies are therefore false, misleading, and make material omissions.

24.    On the label and packaging of the Product, in magazine advertisements, on the Internet,

and in other media, Defendants provide this footnote or similar footnotes supporting their supposed

"Clinical Trials" of the Product is effectiveness:

> ***The clinically tested key ingredient combination (lady's mantle extract, wild olive extract, komijn extract and wild mint extract) is proven effective in two separate studies to provide powerful weight loss versus dieting alone.*** In fact, average weight loss with key ingredients was 20.94 lbs. vs. 1.70 lbs. with placebo in one 12-week study, and 16.50 lbs. vs. 1.73 lbs. in one 8-week study funded by the makers of Hydroxycut. All groups followed a calorie-reduced diet. -- www.hydroxycut.com

> In study one, **a 12-week third-party, randomized, double-blind, placebo-controlled clinical study, test subjects using the key ingredients** (Hydroxyprovia™, Alchemilla vulgaris, Olea europaea, Cuminum cyminum, Mentha longifolia) in Pro Clinical Hydroxycut™ lost an average of 20.94 lbs. versus the placebo group who lost an average of 1.70 lbs. Test subjects also significantly reduced BMI versus the placebo group (10.2% vs 0.9%). Both groups followed a calorie-reduced diet. -- Product label

> Data analysis of the results from both clinical trials on the key ingredients in Pro Clinical Hydroxycut™ **showed there is statistical significance for test subjects losing 7 times more weight than placebo subjects.** -- Product label

25.    Defendants' representations concerning these two studies are false, misleading, and make

material omissions, among other reasons, because:

(1) Defendants fail to give citations to the studies supporting the claims, effectively hiding any

defects in the data from even the most diligent consumer;

(2) concerning the "first study:"

A.  Defendants fail to disclose that the first study[1] was conducted by a for-profit herbal

remedies manufacturer located in rural northern Israel;

B.  Defendants fail to disclose that the first study was published in a fringe journal

requiring minimal peer review, in only the journal's second issue;

---

[1] Omar Said, *et al.*, *A Double Blinded-* [sic] *Randomized Clinical Study With "Weighlevel",* [sic] *a Combination of Four Medicinal Plants Used in Traditional Greco-Arab and Islamic Medicine*, The Open Complementary Medicine Journal, 2010, 2, 1-6.

C.  Defendants fail to disclose that the first study did not use a sufficiently representative sample;

(3) concerning the "second study:"

A.  Defendants have failed to adequately disclose that Iovate funded the second study; and,

B.  Defendants fail to supply any information on the second study.

26.    Further, the "clinical studies" so heavily relied upon by Defendants are materially misleading and fail to reveal the following information:

(1) The studies fail to specify the amount of "key ingredients" or the Product used by participants in the studies or whether the amount taken in the studies reflects a reasonable dosage of the Product;

(2) The studies fail to specify the amount of calories in the "calorie-reduced diet" that would be required in addition to taking the Product before the Product is effective; and,

(3) The studies fail to supply any information on the participants used in the study, such as the size of the sample or whether the sample represents the population at large.

27.    Further, no unbiased independent study can be found to support the claim that Hydroxyprovia or Hydroxagen aid in weight loss at all, or lower BMI, much less a sevenfold increase in weight-loss compared to similar diet and exercise without taking the Product. Biased clinical studies do not give "clinical proof."

28.    Finally, Defendants have effectively contradicted the FDA's objective and well-founded conclusion regarding the effectiveness of caffeine for weight-loss and that claims to efficacy are misleading.

29.    In short, the Product is marketed as containing special "key ingredients" that are scientifically verified to give considerable aid in weight loss and loss of BMI, when it actually consists of an ingredient the FDA has determined unsafe and ineffective for weight-loss and is mixed with fruit extracts of unproven efficacy.

/ / /

*Specific Misrepresentations, Material Omissions and Deceptive Facts*

*a. Product Labeling*

30.    Hydroxycut's label is white, red, orange and purple, with a "Clinically Proven" seal, and text that says "Lose Weight," "Lose More Weight than Dieting Alone" and "Significantly Reduce BMI." The label also states that the "Key Ingredients" are "Clinically Proven" for the purpose of "Weight Loss," as shown below:



31.    Each of these statements is false and/or misleading because the Product is not effective in achieving these results and the "clinical trials" referenced are junk science.  Defendants' marketing and promotion is misleading, false, and contains material omissions concerning the Product's efficacy and supposed mechanism of action.

32.    Hydroxycut's label also states that the Product will "Increase Energy," and during the Class Period failed to qualify that the statement "Increase Energy" has not been evaluated by the FDA.

33.    This statement is false and/or misleading, because while caffeine may in fact "Increase Energy," the FDA has in fact determined that "there are inadequate data to establish the general

8

recognition of the safety and effectiveness" of caffeine for the specified use of weight control. *See* 21 C.F.R. § 310.545(20). Thus, the labeling is unlawful and omits material information.

### b. Magazine Advertising

34.     Defendants also use magazine advertisements to promote their "Pro Clinical" Product. The image below is an advertisement from an issue of "The Costco Connection."



35.     This advertisement, in the largest print, states Pro Clinical Hydroxycut delivers "Clinically Proven Weight-Loss Results." "Clinically Proven" appears three times in the advertisement.

36.     This magazine advertisement and similar advertisements state "7x More Weight Lost by Subjects in Two Clinical Trials" and consumers will "Significantly Reduce BMI."

37.     The advertisements state that "Data Analysis of the results on the key *Hydroxyprovia* ingredient blend in *Pro Clinical Hydroxycut* showed that test participants lost 7 times more weight than placebo subjects."

38.     Each of these statements is false and/or misleading because the Product is not effective in

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

achieving these results and the "Clinical Trials" referenced are junk science. Defendants' marketing and promotion is misleading, false, and contains material omissions concerning the Product's efficacy and supposed mechanism of action.

39.    The advertisements also include a "doctor's recommendation," a type of establishment claim under the Federal Trade Commission Act, that the Product is effective, stating:

> I've reviewed the studies of the clinically proven key ingredients. Subjects lost significantly more weight than dieting alone. I highly recommended new *Pro Clinical Hydroxycut*. -- Dr. Jeff Delson, M.D.

40.    Among other omissions in Defendants' advertising, the doctor does not indicate if he has been compensated for endorsing the product nor whether the studies are consistent with the Product as used by consumers. No independent clinical trials are given, and no reputable evidence supporting these claims is given. The amount of calories in the "calorie-reduced diet" is not provided.

41.    The advertisements include pictures of Product users, that Defendants admit were paid, with testimonials including: "I lost 40 lbs with Hydroxycut! My results are 100% real!" and "I lost 42 lbs with Hydroxycut! It really works!"

42.    The before and after photos promoting the Product are false, misleading, and/or computer modified.

### c. Internet Advertising

43.    Defendants maintain a website, www.hydroxycut.com (the "Website").

44.    The Website contains a "Testimonials" section, where a lone doctor is again pictured, supporting that the Product as effective:

> I highly recommend Pro Clinical Hydroxycut. The key ingredients are clinically proven to help people lose weight. -- Dr. Jeff Delson, M.D.

45.    Among other omissions in Defendants' advertising, the doctor does not indicate if he has been compensated for endorsing the product nor whether the studies are consistent with the Product as used by consumers. No independent clinical trials are given, and no reputable evidence supporting these claims is referenced.

46.    The Website contains a "Success Stories" section wherein paid actors, some professional models, are marketed as "Success Stories."

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

47.     The before and after photos promoting the Product on the Website are false, misleading, and/or computer modified.

48.     The Website, last visited 6/21/2012, represents:

If you want powerful weight loss support you can trust, *Pro Clinical Hydroxycut* is the solution you've been waiting for to help shed those unwanted pounds when you add it to your diet and exercise plan. It contains potent key ingredients that can help you lose weight, plus another ingredient to boost your energy!

\*\*\*

*Pro Clinical Hydroxycut* is the latest weight loss innovation from the *Hydroxycut* brand, an industry leader in weight loss supplements with a commitment to excellence that has stood for over 16 years.

This powerful formula can help you lose weight and reduce BMI as part of your diet and exercise plan. It also contains an ingredient (caffeine anhydrous [1,3,7-trimethylxanthine]) that can boost your energy to help you keep up with your exercise plan and still have the energy left to get more done in a day!

Losing Weight can be an incredible experience, and it's one you can look forward to with help from *Pro Clinical Hydroxycut*!

\*\*\*

The powerful *Pro Clinical Hydroxycut* weight loss formula contains a key weight loss ingredient combination that is clinically proven in two clinical studies to provide effective weight loss results!  Have a look at the study results and see the power of this potent weight loss ingredient combination for yourself!

49.     Each of these statements is false and/or misleading because the Product is not effective in achieving these results and the "studies" referenced are junk science.  Defendants' marketing and promotion is misleading, false, and contains material omissions concerning the Product's efficacy and supposed mechanism of action.

50.     The Website also contains a section called "Science" that supposedly shows the results of the "Clinical Studies":

/ / /

/ / /

/ / /

/ / /

/ / /

**THE TRIPLE CHECK 100% QUALITY COMMITMENT**

The integrity of our ingredients is essential – that's why we ensure that high-quality and effective key ingredients make their way into our formulas. In fact, we stand by it with our commitment to quality, purity and science. Our products are also manufactured according to cGMP standards, as is required for all dietary supplements.

Average weight loss with key ingredients was 20.94 lbs. in one 12-week study and 16.50 lbs. in one 8-week study. All groups followed a calorie-reduced diet.

**RAPID RELEASE CAPLET TECHNOLOGY**

*Pro Clinical Hydroxycut* ™ utilizes advanced Rapid Release Caplet Technology that is designed for enhanced solubility and quick dispersal.



51.     The diagrams above are a product of junk science and represent Defendants' false and misleading advertising couched under a "100% Quality Commitment" to "Science."  In reality, the Product is not a "powerful" weight loss product, but a combination of ingredients that have never been "clinically proven" to support weight loss, and do not support weight loss.

### Hydroxycut Violates Applicable Law

52.     The Product's advertising and the Product violate California Health and Safety Code § 109875, *et. seq.* (the "Sherman Law"), as outlined in ¶¶ 53-59 below.

53.     Under section 201(g)(1)(B) of the Food, Drug & Cosmetic Act (FDCA), 21 U.S.C. § 321(g)(1)(B), articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease are considered drugs. Under § 321(g)(1)(C), articles intended to affect the structure or any function of the human body are also classified as drugs. Hydroxycut and each of its component products includes labeling suggesting the use of Hydroxycut for weight loss and loss of BMI. The Hydroxycut is therefore a "drug" as defined by 21 U.S.C. §§ 321(g) (1)(B) and (C). The FDA also classifies products that include caffeine as an ingredient for the specified use of weight control as drugs. *See* 21 C.F.R. §§ 310.545(a)(20).

54.     Hydroxycut falls with the definition of a "new drug" because it "is not generally recognized among experts … as safe and effective for use under the condition prescribed, recommended, or suggested." 21 U.S.C. § 321(p)(1). Thus, without FDA approval, it is illegal to distribute Hydroxycut

in interstate commerce. 21 U.S.C. § 355(a).

55.    Similarly, federal law prohibits marketers of dietary supplements from making any claim suggesting use of the supplement for the diagnosis, mitigation, treatment or cure of a disease unless the claim is specifically authorized by an FDA finding that there is "significant scientific agreement" to support the claim, or the claim is based on "authoritative statements" from certain federal scientific bodies, such as NIH and the National Academy of Sciences. *See* Dietary Supplement Health Education Act of 1994 ("DSHEA"), (codified at scattered sections of 21 U.S.C. §301 *et. seq.*); 21 U.S.C. § 343(r)(3).

56.    Federal law allows for statements of nutritional support referring to representations about a dietary supplement's effect on the structure or function of the body for maintenance of good health and nutrition – so-called structure/function claims – without FDA authorization. But structure/function claims are allowed only if the manufacturer has adequate substantiation that the claim is truthful and not misleading, and also prominently displays the DSHEA disclaimer: "This statement has not been evaluated by the Food and Drug Administration. This product is not intended to diagnose, treat, cure, or prevent any disease." Moreover, a structure/function claim may not "claim to diagnose, mitigate, treat, cure or prevent a specific disease or class of diseases." 21 U.S.C. § 343(r)(6).

57.    The claims identified herein suggest the use of Hydroxycut for weight control.  This claim has not been authorized by the FDA or any scientific body.

58.    To the extent that the claims identified above can be construed as structure/function claims not requiring FDA authorization or support from an authoritative scientific body, they nevertheless run afoul of DSHEA because Defendants' do not possess adequate "substantiation" that these statements are truthful and not misleading. The "Clinical Trials" do not qualify as adequate substantiation, as that term is defined by the FTC or FDA.

59.    Hydroxycut is thus "misbranded" and bears a "false or misleading label" under 21 U.S.C. § 343.  As such, the Product violates the Sherman Law, including but not limited to California Health and Safety Code § 110390.

/ / /

## CLASS ACTION ALLEGATIONS

60.     The Class is defined as:  All persons in the United States who purchased a Hydroxycut Pro Clinical from January 1, 2010 to the present ("Class Period") for personal or household use, and not for resale or distribution purposes.  Excluded from the Class are Defendants' officers, directors, shareholders, and employees.

61.     The persons in this Class are so numerous that the joinder of all such persons is impracticable and Plaintiff contends the following common questions of law or fact:

(a)     whether Defendants had adequate substantiation for their claims prior to making them;

(b)     whether the challenged claims discussed above are false, misleading, or reasonably likely to deceive a reasonable consumer;

(c)     whether Defendants' conduct violates public policy;

(d)     whether Defendants' conduct constitutes violations of the laws asserted herein;

(e)     whether Defendants engaged in false or misleading advertising;

(f)     whether Plaintiff and Class members are entitled to declaratory and injunctive relief.

These questions of law and fact predominate over questions that affect only individual class members.

62.     Plaintiff's claims are typical of those of the class and he will fairly and adequately represent the interests of the class.  Plaintiff will serve as adequate class representative.  Plaintiff's counsel is highly experienced in complex consumer class action litigation, and will vigorously represent the best interests of the class.  Plaintiff has no adverse or antagonistic interests to those of the Class.

63.     Class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The expense and burden of individual litigation would make it impracticable or impossible for proposed Class members to prosecute their claims individually. The trial and the litigation of Plaintiff's claims are manageable.

64.     Unless a class-wide injunction is issued, Defendants will continue to commit the violations alleged, and the members of the Class and the general public will continue to be misled, to the detriment of the Class and the public.

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

65.    Defendants have acted and refused to act on grounds generally applicable to the Class, making appropriate final injunctive relief with respect to the Class as a whole.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**For Violations of the Consumers Legal Remedies Act – Civil Code Section 1750 *et seq.***

**[On Behalf of Plaintiff and the Class and Against each Defendant]**

66.    Plaintiff repeats, re-alleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

67.    At all times relevant herein, there was in full force and effect the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* (the "Consumer Legal Remedies Act") and similar deceptive practice acts in other states.  Plaintiff is a consumer as defined by Civil Code § 1761(d). Hydroxycut are goods within the meaning of Civil Code § 1761(a).

68.    Defendants violated and continue to violate the Consumer Legal Remedies Act by engaging in the following practices proscribed by § 1770(a), in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Hydroxycut:

(a)    Advertising that Hydroxycut is effective for weight loss when it is not;

(b)    Representing that Hydroxycut has characteristics, uses or benefits which it does not have;

(c)    Representing that Hydroxycut is of a particular standard, quality or grade when it is of another;

(d)    Advertising Hydroxycut with intent not to sell it as advertised;

(e)    Representing that Hydroxycut has been supplied in accordance with a previous representation when it does not;

(f)    Engaging in conduct that creates a likelihood of confusion or misunderstanding.

69.    The Defendants' representations amount to false and/or deceptive acts or practices in violation of the Consumer Legal Remedies Act.

70.    Defendants' actions described herein similarly violated the consumer protection statutes in effect in every state in which Defendants or their affiliates do business.

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

71.    Defendants violated the Consumer Legal Remedies Act, and similar provisions in the Consumer Legal Remedies Acts of other jurisdictions within the United States, by making the representations, claims and nondisclosures for Hydroxycut, as described herein, when it knew, or should have known, that the representations and advertisements were incomplete, false and misleading.

72.    Plaintiff and other members of the Class reasonably relied upon the Defendants' material misrepresentations as to the quality and attributes of Hydroxycut.

73.    Plaintiff and other members of the Class were likely to be deceived by Defendants' representations about the quality and attributes of Hydroxycut, including but not limited to the purported ability of Hydroxycut to cause weight loss.

74.    Plaintiff and other Class members would not have purchased Hydroxycut had they known Defendants' claims were misleading, unfounded or untrue, and the true nature of Hydroxycut, causing them injury in fact in the form of the lost purchase price for the Product.

75.    Plaintiff and the Class seek injunctive relief under Civil Code §1782(d), enjoining the above described wrongful conduct by Defendants.

## SECOND CAUSE OF ACTION

### Violation of California Business & Professions

### Code Section 17200, *et seq*. (Unfair Competition Law)

### [On Behalf of Plaintiff and the Class and Against each Defendant]

76.    Plaintiff repeats, re-alleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

77.    Business & Professions Code Section 17200 prohibits any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  For the reasons discussed above, Defendants have engaged in "unlawful" business acts or practices by, among other things, making misrepresentations and omissions of material facts, as set forth more fully above, and violating, among other statutes, Civil Code §§ 1572, 1573, 1709, 1710, 1711, 1770, Business & Professions Code § 17500, *et seq*., Health & Safety Code § 109875, *et. seq*., and the common law.

78.    Defendants' actions described herein similarly violated the consumer protection statutes

and statutes prohibiting unfair, unlawful or deceptive business acts or practices in effect in every state in which Defendants or their affiliates do business, and the common law of those states.

79.     Plaintiff and the Class reserve the right to allege other violations of law which constitute other unlawful business acts or practices.  Such conduct is ongoing and continues to this date.

80.     Defendants' acts, omissions, misrepresentations, practices and non-disclosures as alleged herein also constitute "unfair" business acts and practices within the meaning of Business & Professions Code Section 17200, *et seq.*, and similar statutory provisions in other jurisdictions within the United States, in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous because the gravity of the conduct outweighs any alleged benefits attributable to such conduct.  As stated in this Complaint, Plaintiff alleges violations of consumer protection, unfair competition and truth in advertising laws resulting in harm to consumers.  Plaintiff asserts violations of the public policy of engaging in false and misleading advertising, unfair competition and deceptive conduct towards consumers.  There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

81.     Defendants' claims, nondisclosures and misleading statements, as more fully set forth above, were also false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code Section 17200 as to "fraudulent" conduct, and similar provisions protecting consumers in other jurisdictions within the United States.  Defendants' labeling, website and other advertisements, as described herein, were false, deceptive, and/or likely to deceive because Defendants are marketing weight loss pills when in reality, Hydroxycut has no weight loss properties, has less weight loss properties than claimed, is not "clinically" proven, and because Defendants omitted material information from the Product's advertising.

82.     Plaintiff and the Class were exposed to Defendants' advertising as alleged herein.

83.     Defendants' conduct caused and continues to cause substantial injury to Plaintiff and members of the Class.  Plaintiff has suffered injury in fact as a result of Defendants' unfair conduct.

84.     Defendants have thus engaged in unlawful, unfair and fraudulent business acts and practices and false advertising, entitling Plaintiff to injunctive relief against Defendants, as set forth in

the Prayer for Relief.

85.    Pursuant to Business & Professions Code Section 17203, Plaintiff seeks an order requiring Defendants to immediately cease such acts of unlawful, unfair and fraudulent business practices and requiring Defendants to engage in a corrective advertising campaign.

86.    Plaintiff and the Class members are likely to be damaged by Defendants' deceptive trade practices, as Defendants continue to disseminate misleading information. Thus, injunctive relief enjoining this deceptive practice is proper.

87.    Plaintiff and the Class also seek an order for the disgorgement and restitution of all monies from the sale of Defendants' Products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## THIRD CAUSE OF ACTION

### Violations of California Business and Professions

### Code Section 17500 *et seq.* (False Advertising Law)

### [On Behalf of Plaintiff and the Class and Against each Defendant]

88.    Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

89.    Plaintiff has standing to pursue this claim as Plaintiff suffered injury in fact as a result of Defendants' actions as set forth herein.  Specifically, prior to the filing of this action, Plaintiff purchased Hydroxycut in reliance upon Defendants' marketing claims. Plaintiff used Hydroxycut as directed, but Hydroxycut did not work as advertised, nor provide any of the promised benefits.

90.    Defendants' business practices as alleged herein constitute unfair, deceptive, untrue, and misleading advertising pursuant to California Business and Professions Code section 17500, *et seq.* because Defendants have advertised their Products in a manner that is untrue and misleading, or that Defendants knew was untrue or misleading, or omitted material information from their advertising.

91.    Defendants' wrongful business practices have caused injury to Plaintiff and the Class.

92.    Pursuant to section 17535 of the California Business and Professions Code, Plaintiff and the Class seek an order of this Court enjoining Defendants from continuing to engage in deceptive

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

business practices, false advertising, and any other act prohibited by law, including those set forth in this Complaint.

93.    Plaintiff and the Class also seek an order for the disgorgement and restitution of all monies from the sale of Defendants' Products, which were unjustly acquired through acts of unlawful, unfair, and/or fraudulent competition.

## FOURTH CAUSE OF ACTION

**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*. ("MMWA")**

**[On Behalf of Plaintiff and the Class and Against each Defendant]**

94.    Plaintiff repeats, re-alleges and incorporates by reference each and every allegation contained above, as if fully set forth herein.

95.    Plaintiff brings this cause of action individually and on behalf of the members of the Class against all Defendants.

96.    Defendants' Product is a consumer product as defined in 15 U.S.C. § 2301(1).

97.    Plaintiff and Class members are consumers as defined in 15 U.S.C. § 2301(3).

98.    Defendants are suppliers and warrantors as defined in 15 U.S.C. §§ 2301(4), (5).

99.    In connection with the sale of Hydroxycut, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6)(A), by making the statements listed at ¶¶ 9, 11, 12, 16, 19, 20-22, 24, 30, 32-37, 39, 41, 44, 48, 50, 51 of this Complaint (the "Express Warranties").

100.    In fact, the Hydroxycut does not conform to the Express Warranties because of the Express Warranties are false and/or deceptive, whereby Defendants breached the Express Warranties made to Plaintiff and the Class.

101.    Plaintiff and Class members were injured as a direct and proximate result of Defendants' breach because they would not have purchased Hydroxycut absent the Express Warranties, which formed part of the basis of the bargain.

102.    By reason of Defendants' breach of warranties, Defendants violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

103.   Plaintiff and the Class seek damages, equitable relief, and attorney's fees and costs pursuant to 15 U.S.C. §§ 2310(d)(1),(2).

## FIFTH CAUSE OF ACTION

### Breach of Express Warranty

### [On Behalf of Plaintiff and the Class and Against each Defendant]

104.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

105.   On Hydroxycut labels, and throughout their marketing campaign as described above, specifically at ¶¶ 9, 11, 12, 16, 19, 20-22, 24, 30, 32-37, 39, 41, 44, 48, 50, 51, expressly warranting that the Product was effective, proper, and safe for its intended use.  Defendants made affirmations of fact or promises, or description of goods, which were "part of the basis of the bargain," in that Plaintiff and the Class purchased Hydroxycut in reasonable reliance on those statements.  Cal. Com. Code §2313(1); *see also Zwart v. Hewlett-Packard Co.*, 2011 WL 3740805 (N.D. Cal., Aug. 23, 2011) (holding that online assertions can create warranties).

106.   Defendants breached the express warranties with Plaintiff and the Class by not providing Hydroxycut which could provide the benefits described above, and that breach actually and proximately caused injury in the form of the lost purchase price for Hydroxycut.

107.   As a result of Defendants' breach of their warranties, Plaintiff and the Class have been damaged in the amount of the purchase price of Hydroxycut they purchased.

## SEVENTH CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314(1), 2314(2)(f))

### [On Behalf of Plaintiff and the Class and Against each Defendant]

108.   Plaintiff repeats, realleges and incorporates by reference each and every allegation contained above as if fully set forth herein.

109.   Defendants, through their acts and omissions set forth herein, in the sale, marketing and promotion of Hydroxycut, made representations to Plaintiff and the Class that Hydroxycut helps consumers lose weight.  *See*, inter alia, ¶¶ 9, 11, 12, 16, 19, 20-22, 24, 30, 32-37, 39, 41, 44, 48, 50, 51.

Plaintiff and the Class bought Hydroxycut manufactured, advertised and sold by Defendants, as described herein.

110.    Defendants are merchants with respect to the goods of this kind which were sold to Plaintiff and the Class, and there was in the sale to Plaintiff and other consumers an implied warranty that those goods were merchantable.

111.    However, Defendants breached that warranty implied in the contract for the sale of goods in that Hydroxycut did not provide the purported benefits, as set forth in detail herein.

112.    As a result of Defendants' conduct, Plaintiff and the Class did not receive goods as impliedly warranted by Defendants to be merchantable in that they did not conform to the promises and affirmations made on the container or label of the goods.

113.    Plaintiff and Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of himself, all others similarly situated, and the general public, prays for a judgment against Defendants on each cause of action:

A.  For an order declaring this action to be a proper Class Action and requiring Defendants to bear the costs of class notice;

B.  For Plaintiff's and the Class' warranties' claims, including the MMWA, an order awarding Plaintiff and the proposed Class members damages in an amount to be determined at trial;

C.  For Plaintiff's and the Class' CLRA, UCL, FAL, and MMWA claims, an order awarding declaratory and injunctive relief as permitted by law or equity, including enjoining Defendants from continuing the unlawful practices as set forth herein;

D.  For Plaintiff's and the Class' UCL and FAL claims, an order awarding restitution and disgorgement of Defendants' revenues to Plaintiff and the proposed Class members;

E.  An order compelling Defendants to engage in a corrective advertising campaign to inform the public concerning the true nature of the Product;

F.  An order awarding attorneys' fees and costs to Plaintiff;

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT

G.  An order providing for all other such equitable relief as may be just and proper.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

DATED:  July 6, 2012

/s/ Ronald A. Marron
Ronald A. Marron
**THE LAW OFFICES OF RONALD A.**
**MARRON, APLC**
RONALD A. MARRON
MAGGIE K. REALIN
SKYE RESENDES
3636 4th Avenue, Suite 202
San Diego, CA 92109
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
COURTLAND CREEKMORE
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**SALAS WANG LLC**
Jeffrey M. Salas
155 N. Wacker Drive,
Suite 4250
Chicago, IL 60606
Telephone: (312) 803-4963
Facsimile: (312) 244-3151

*Branca v. Iovate Health Sciences USA Inc., .et al.*
CLASS ACTION COMPLAINT