1  **LAW OFFICES OF RONALD A.**
   **MARRON**
2  RONALD A. MARRON (SBN
   175650)
3  *ron@consumersadvocates.com*
   SKYE RESENDES (SBN 278511)
4  *skye@consumersadvocates.com*
   ALEXIS WOOD (270200)
5  *alexis@consumersadvocates.com*
6  3636 4th Avenue, Suite 202
   San Diego, California 92103
7  Telephone:(619) 696-9006
   Facsimile: (619) 564-6665
8
9

**THE WESTON FIRM**
GREGORY S. WESTON (SBN
239944)
*greg@westonfirm.com*
JACK FITZGERALD (SBN 257370)
*jack@westonfirm.com*
MELANIE PERSINGER (SBN
275432)
*mel@westonfirm.com*
1405 Morena Blvd., Suite 201
San Diego, California 92110
Telephone:(619) 798-2006
Facsimile: (480) 247-4553

10

11  (Additional Counsel Listed on Signature Page)
12  *Attorneys for Plaintiff and the Proposed Class*

13          **UNITED STATES DISTRICT COURT**
14
15          **SOUTHERN DISTRICT OF CALIFORNIA**

16  KEVIN BRANCA, an individual, on
    behalf of himself and all others
17  similarly situated,
18
19              Plaintiff,
20
21      v.
22
23  IOVATE HEALTH SCIENCES USA,
    INC., et al.
24
25              Defendants.
26
27
28

Case No.: 3:12-cv-01686 LAB (WMC)
Class Action
Complaint Filed:  July 6, 2012

**DECLARATION OF RONALD A.**
**MARRON IN SUPPORT OF**
**OPPOSITION TO DEFENDANT**
**IOVATE HEALTH SCIENCES USA,**
**INC.'s MOTION TO STAY PENDING**
**APPROVAL OF CLASS SETTLEMENT**
**IN RELATED PROCEEDING**

**Special Briefing Schedule Ordered**

Date:      April 2, 2013
Judge:     Honorable Larry A. Burns
Time:      11:30 a.m.
Location:  Courtroom 9

1.      I am counsel of record for Plaintiff Kevin Branca in this action.  I am a member in good standing of the State Bar of California, the United States District Courts for the Northern, Central, Eastern and Southern Districts of California, and the Ninth Circuit Court of Appeal.  I submit this Declaration in Opposition to Defendant's Motion to Stay this action.  I make this Declaration based on my personal knowledge and if called to testify I could and would competently testify to the matters contained thereto.

2.      Attached hereto as **Exhibit 1** is a true and correct copy of the Tentative Ruling from the Santa Barbara Superior Court, Hon. Denise de Bellefeuille presiding, Granting Mr. Branca's Motion to Intervene in *Garcia v. Iovate Health Sciences U.S.A., Inc.* and dated February 20, 2013.  The Tentative Ruling became the Final Ruling of the court after the hearing on February 21, 2013.   Page 5 of the Ruling states: "Despite its knowledge of and active participation the *Branca* case, Iovate did not inform this court of [*Branca*'s] existence. . . . Regardless of whether a corresponding federal rule or common courtesy required Iovate to notify Branca of this action, Garcia and Iovate were not forthcoming regarding the existence of two pending purported class actions setting forth identical causes of action."  Page 5 further states: "Garcia filed his complaint on July 20, 2012 and service was effective . . . on July 31, 2012. . . . Iovate did not challenge the pleading but immediately answered, also on July 31. The next substantive pleading in the case was a November 15, 2012 joint CMC statement indicating the case had settled[.]"

3.      Attached hereto as **Exhibit 2** is a true and correct copy of the Judge de Bellefeuille's Order Granting Ex Parte Application for an Order Shortening Time for Mr. Bring to bring a motion to intervene in *Garcia*, dated January 31, 2013.

4.      Attached hereto as **Exhibit 3** are true and correct copies of excerpts from Iovate's Opposition to Mr. Branca's Motion to Intervene in *Garcia*, the Declaration of Scott J. Ferrell in Opposition to Mr. Branca's Motion to Intervene and Exhibit B from Mr. Ferrell's Declaration.  Exhibit B is an e-mail by Mr. Ferrell purportedly sent to

1

*Branca v. Iovate Health Sciences USA, Inc., et al.*, Case No. 3:12-cv-01686 LAB (WMC)
DECLARATION OF RONALD A. MARRON IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

me, and states: "I am writing to follow up on the two previous letters and at least two voice mails that my office has left for you. My client is interested in mediating all of the "Hydroxycut Pro Clinical" litigation and would like to invite you to participate in that litigation [sic]; my clients have agreed to pay for the mediation. [¶] . . . Given that we are attempting to schedule that mediation within the next few weeks, we need to know if you and your client will participate in it." I did not receive a copy of the e-mail attached as Exhibit B because it was not addressed to my correct e-mail address, but instead was addressed to ron@consumeradvocates, omitting the "s" after "consumer."

5.     Attached hereto as **Exhibit 4** is a true and correct copy of the Notice of Association of Kirkland & Packard as Counsel for Plaintiff Worthington, signed and filed by Scott Ferrell of Newport Trial Group, in *Worthington v. Fiji Water Company LLC*, Case No. 2:10-cv-9795-SJO-JEM (C.D. Cal.).

6.     Attached hereto as **Exhibit 5** is a true and correct copy of the Complaint in *Hogan v. USPLabs, LLC*, Case No. BC486925 (Los Angeles Super. Ct.), filed 21 days before *Garcia* was filed, with signature page showing Kirtland & Packard and Newport Trial Group representing plaintiffs in that action.

7.     Attached hereto as **Exhibit 6** is a true and correct copy of the Settlement Agreement in *Smart v. Obesity Research Inst., LLC, et al.,* Case Nos. BC407882 & BC426780 (Los Angeles Super. Ct.) showing Kirtland & Packard, Newport Trial Group and one other plaintiff's firm as co-counsel for plaintiffs in that action.

8.     On Saturday, March 16, 2013, Iovate took Mr. Branca's deposition concurrently in this and the *Garcia* actions.

9.     Attached hereto as **Exhibit 7** are true and correct copies of excerpts from Mr. Garcia's Opposition to Mr. Branca's Motion to Intervene in *Garcia*. Page 5 of this Opposition states:  "Mr. Garcia was apprised of Kirtland & Packard's co-counsel relationships with Newport Trial Group . . . . and concluded that such relationships did not present a conflict."

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on this 18th day of March, 2013 in San Diego, California.

*/s Ronald A. Marron*
Ronald A. Marron

*ron@consumersadvocates.com*

**THE LAW OFFICES OF**
**RONALD A. MARRON, APLC**
RONALD A. MARRON
SKYE RESENDES
3636 4th Avenue, Suite 202
San Diego, CA 92109
Telephone: (619) 696-9006
Facsimile: (619) 564-6665

**THE WESTON FIRM**
GREGORY S. WESTON
JACK FITZGERALD
MELANIE PERSINGER
1405 Morena Blvd., Suite 201
San Diego, CA 92110
Telephone: (619) 798-2006
Facsimile: (480) 247-4553

**SALAS WANG LLC**
Jeffrey M. Salas (Pro Hac Vice)
155 N. Wacker Drive, Suite 4250
Chicago, IL 60606
Telephone: (312) 803-4963

Facsimile: (312) 244-3151

***Attorneys for Plaintiff and the Proposed Class***

*Branca v. Iovate Health Sciences USA, Inc., et al.*, Case No. 3:12-cv-01686 LAB (WMC)
DECLARATION OF RONALD A. MARRON IN OPPOSITION TO DEFENDANT'S MOTION TO STAY

**Table of Exhibits**

| EXHIBIT NUMBER | EXHIBIT DESCRIPTION | PAGE NUMBERS |
|---|---|---|
| Exhibit 1 | Tentative Ruling Granting Mr. Branca's Motion to Intervene in Garcia v. Iovate Health Sciences U.S.A., Inc. | 1 – 5 |
| Exhibit 2 | Order Granting Ex Parte Application for Leave to Intervene | 6 – 7 |
| Exhibit 3 | Excerpts from Iovate's Opposition to Mr. Branca's Motion to Intervene in *Garcia*; the Declaration of Scott J. Ferrell in Opposition to Mr. Branca's Motion to Intervene; and Exhibit B from Mr. Ferrell's Declaration | 8 – 16 |
| Exhibit 4 | Notice of Association of Kirkland & Packard as Counsel for Plaintiff Worthington | 17 – 18 |
| Exhibit 5 | Complaint in *Hogan v. USPLabs, LLC*, Case No. BC486925 (Los Angeles Super. Ct.) | 19 – 36 |
| Exhibit 6 | Settlement Agreement in *Smart v. Obesity Research Inst., LLC, et al.,* Case Nos. BC407882 & BC426780 (Los Angeles Super. Ct.) | 37 – 47 |
| Exhibit 7 | Excerpts from Mr. Garcia's Opposition to Mr. Branca's Motion to Intervene in *Garcia* | 48 – 49 |

# EXHIBIT 1

Search

❖ SBCOURTS HOME

❖ SELF HELP:

- SB Legal Resource Center
- Family Law Facilitator
- California Courts Self Help
- Centro de Ayuda de las Cortes de California

❖ **ONLINE SERVICES:**

- Tentative Rulings
- Public Civil Index
- Court Calendars

❖ COURT FILING FEES

❖ COURT RULES:

- Current
- Proposed

❖ COURT FORMS:

- Judicial Council Forms
- Local Court Forms

❖ ANNOUNCEMENTS

PRINT THIS PAGE    SEARCH AGAIN

## TENTATIVE RULING

**Judge Denise deBellefeuille**
**Department 6 SB-Anacapa**
**1100 Anacapa Street**
**P.O. Box 21107**
**Santa Barbara, CA  93121-1107**

# CIVIL LAW & MOTION

| Daniel Garcia vs Iovate Health Sciences USA Inc |
|---|
| **Case No:** | 1402915 |

EXHIBIT 1 (PAGE 1)

| Hearing Date: | Thu Feb 21, 2013 9:30 |
|---|---|

**Nature of Proceedings:** Case Management Conference; Motion: Intervene

The court grants Kevin Branca's motion to intervene in this proceeding. Kevin Branca shall file and serve his complaint in intervention no later than March 7, 2013.

On July 20, 2012, plaintiff Daniel Garcia filed this purported class action against defendant Iovate Health Sciences U.S.A., Inc. Iovate manufactures, markets and sells Hydroxycut – a weight loss product. Garcia alleges: The product does not have the weight loss capabilities that Iovate claims in advertising. Garcia would not have purchased the product but for the claims Iovate made. Garcia was damaged in purchasing Hydroxycut because he did not experience any of the promised weight loss or body mass index reduction benefits. The causes of action are: 1) violation of false advertising law ("FAL" - B&P Code § 17500, et seq.); 2) violation of unfair competition law ("UCL" - B&P Code § 17200, et seq.); 3) violation of California Consumer Legal Remedies Act ("CLRA" - Civil Code § 1750, et seq.); 4) violation of the Magnuson-Moss Warranty Act; 5) breach of express warranty; and 6) breach of implied warranty of merchantability.

On January 22, 2013, the parties filed a joint motion for preliminary approval of a class action settlement. Pursuant to the terms of the tentative settlement, the Settlement Class consists of all persons in the U.S. who purchased Hydroxycut from July 20, 2008 to the date the court preliminarily approves the settlement. Iovate would pay $400,000 into an escrow account for a non-reversionary fund to be used exclusively to pay claims of purchasers who do not have a purchase receipt – those purchasers would get $25.00 per bottle of Hydroxycut purchased. Iovate would internally reserve $1,000,000 (the "reserve fund") for settlement over and above the non-reversionary fund for class members submitting a claim with purchase receipts, who will be funded the full amount documented with no limit on the number of bottles of Hydroxycut refunded . There is no cap on recovery for class members with receipts. The monies in the reserve fund would also be used to pay costs associated with administration of the settlement and attorneys' fees and costs awarded by the court. The settlement also provides that Iovate will change labels for Hydroxycut to indicate "individual results vary" and "use with sensible diet and exercise."The court took the motion to preliminarily approve the settlement off calendar when it set the motion to intervene for a hearing.

Kevin Branca seeks to intervene in this action. He is a member of the putative class and, on July 6, 2012 (two weeks before the commencement of this action), he brought his own purported class action in the U.S. District Court, Case No. 12-cv-1686-LAB-WMC (S.D. Cal.). The causes of action in his complaint are the same six causes of action Garcia has asserted in this action.Branca argues: The proposed settlement of this action is collusive. Counsel for Iovate – the Newport Trial Group (NTG) has served as co-counsel with Garcia's counsel Kirtland & Packard (K&P) in other actions. Branca's counsel – Marron and Weston – have battled with NTG in other cases. In defending the Branca action, NTG filed two motions to dismiss – one for lack of personal jurisdiction and another for failure to state a claim but they have not demurred to this action. Counsel did not report the overlapping actions to both courts until it reached a settlement in this case. (On January 22, 2013, Iovate moved to stay the Branca action pending the settlement of this case.) These facts strongly suggest fraud in the filing, prosecution and settlement of this case. NTG likely recruited its long-time cohort K&P to file this action and quickly negotiate a settlement that would resolve the Branca action and vitiate the possibility of Marron and Weston obtaining fees. Garcia and his counsel have irreconcilable conflicts of interest. The proposed

**EXHIBIT 1 (PAGE 2)**

settlement in this case is weak, providing only $400,000 in possible benefits and allowing Iovate continue to misrepresent its product, while providing K&P with $250,000 in fees.

Branca also argues: He is entitled to intervene as a matter of right under Civil Code § 1781(e)(3). He is also entitled to intervene as a matter of right because he claims an interest relating to the property or transaction that is the subject of the action and is so situated that disposition of the action may as a practical matter impair or impede his ability to protect that interest. He is entitled to permissive intervention because he has an interest in the litigation, intervention will not enlarge the issues and the reasons for intervention outweigh opposition by the existing parties.

Branca seeks to intervene in order to 1) take discovery from counsel and Garcia to determine if the strong suggestion of fraud is borne out by the facts; 2) seek continuance of the motion for preliminary approval (it is off-calendar) or dismissal or a stay of this action under the first-to-file rule in deference to the Branca action; and/or 3) oppose the motion for preliminary approval on grounds that the settlement is unreasonable and class counsel is inadequate due to irreconcilable conflicts of interest.

Garcia's Opposition: Garcia opposes the motion to intervene and argues: The motion to dismiss the federal action for lack of jurisdiction was brought on behalf of a Canadian corporation, which was sued in that case and is not present in this case. Branca did not serve this defendant in the federal case until November 7, 2012. K&P is co-counsel with NTG in a number of cases and that is not uncommon in practice where many firms take cases for both plaintiffs and defendants. Class members can be notified of any potential conflict. K&P is capable of representing the class. Terms of the settlement show no evidence of collusion. The settlement provides a fund for claimants without receipts for purchase who would not be able to recover in event of a litigated judgment since they would still have to prove damages. Civil Code § 1781(e)(3) does not authorize intervention. Class members may appear through counsel, which is the legal equivalent of intervention in the context of a class settlement. Branca cannot show he will gain or lose in the event of a judgment in this case because he can opt out of the class and pursue his claims against Iovate. Branca just want to engage in impermissible discovery of negotiations in mediation.

Iovate's Opposition: Iovate opposes the motion, arguing: Iovate's counsel informed Marron and Weston of the intention to mediate all "Hydroxycut Pro Clinical" litigation. Iovate's counsel – NTG – and Garcia's counsel – K&P – have also been opposing counsel in heated litigation. There is no collusion here. One of Branca's counsel – the Marron firm – is currently co-counsel with NTG in another case. Iovate provides a litany of unreported decisions in federal courts questioning the suitability of Marron and/or Weston as class counsel. Appearance and objection is the proper procedure at this stage of proceedings, not intervention. The motion to intervene is not timely as there has been an unreasonable delay.

Reply: In reply, Branca argues: Unidentified class members cannot waive a conflict of interest or even a potential conflict of interest. In any event, K&P have not disclosed any conflict in the motion for preliminary approval of the class settlement. Even Garcia has not waived any conflict because he contends there is no conflict. The common litigation agreement struck among six firms does not make Marron "co-counsel" with NTG. The agreement was for the purpose of resolving intra-party disputes among plaintiffs' counsel in seven related actions. NTG previously made the same assertions regarding Marron and Weston and a federal judge found no credible evidence of collusion on the part of Marron & Weston.

Iovate sought to dismiss Branca's complaint for failure to state a claim – not just for lack of jurisdiction over the Canadian corporation. The arguments in that motion to dismiss were equally applicable to Garcia's complaint. That Iovate treated the two plaintiffs disparately is

**EXHIBIT 1 (PAGE 3)**

evidence of collusion in this case. Iovate was served with the original complaint in the Branca case and moved to dismiss it on August 3, 2012. The statement that Iovate was not served until November 2012 is disingenuous – that is when Iovate was served with the first amended complaint.

The e-mail allegedly informing Branca of this action was addressed to Mr. Marron at the wrong e-mail address. In any event, that e-mail does not identify this lawsuit. Nor would the reference to "all Hydroxycut" litigation have been a substitute for disclosure of this suit because, at the time, there was multidistrict litigation in federal court concerning various Hydroxycut products. There has been no delay in seeking to intervene as Branca's counsel only learned of this case on January 22, 2013 and brought the ex parte application on January 29, 2013. Intervention is appropriate where there has been no preliminary approval of a settlement. The court has discretion to stay this action sua sponte.

Ruling CCP § 387(a) provides, in part: "Upon timely application, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." This is known as permissive intervention. CCP § 387(b) provides: "If any provision of law confers an unconditional right to intervene or if the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties, the court shall, upon timely application, permit that person to intervene." This is known as intervention as a matter of right.

Civil Code § 1781(d) provides that the court may direct notification of class members when an action under the CLRA is permitted to proceed as a class action. The notice must inform class members that "any member who does not request exclusion, may, if he desires, enter an appearance through counsel." Civil Code § 1781(e)(3). This statute does not mention an unconditional right to intervene but it has been described as having that effect. Rylaarsdam & Edmon, California Practice Guide, Civil Procedure Before Trial, ¶ 2:403 p. 2-66 [Rutter Group 2012].

As Garcia concedes, the right to object to a settlement is the legal equivalent of intervention. [Garcia Opp. 8:24-25] Garcia contends that intervention is only available in a litigated class action, not in a settlement. The full discussion on which Garcia relies is: Intervention would be the appropriate procedure if this were a litigated class action. In the context of a class settlement, objecting is the procedural equivalent of intervening. As the court in Trotsky explained, notice to class members must be structured to enable them to decide "whether to intervene or object, 'opt out,' or accept the settlement."

Wershba v. Apple Computer, Inc., 91 Cal.App.4th 224, 253 (2001). The court was not saying that a party had no right to intervene when there is a settlement in a class action. The court simply found that the class notice was adequate because it specifically informed class members that they could obtain their own attorneys if they desired and the failure to use the term "intervene" did not render the notice inadequate. Id. The term "intervene" is used interchangeably with the right to appear through counsel in a CLRA action. Trotsky v. Los Angeles Fed. Sav. & Loan Assn., 48 Cal.App.3d 134, 152 (1975). In any event, the proposed settlement in this case has not been preliminarily approved, so there is no opportunity to object to it at this time.

Branca moved to intervene within a week of being informed of this case. Iovate contends its counsel notified Branca's counsel of this action, but the e-mail only mentions mediation of "all of the 'Hydroxycut Pro Clinical' litigation…." [Ferrell Dec. Exh. B] Counsel did not

**EXHIBIT 1 (PAGE 4)**

indicate that the settlement would be pursued in an action of which Branca had no notice. Also, the e-mail was directed to the wrong address. [Marron Reply Dec. ¶ 20]The court concludes that Kevin Branca has a statutory right to intervene and there has been no unreasonable delay in bringing the motion.

Even if the court were not convinced that Branca has a statutory right to intervene, the court would exercise its discretion to permit intervention pursuant to CCP § 387(b). In the competition for business in the class action field, there is a disturbing trend of attorneys casting aspersions on the motives, behavior and qualifications of fellow attorneys in the field. The court is less interested in these accusations than the hard facts before it. Also, the court is not deciding the merits of the proposed settlement, only the motion to intervene.

What the court knows is that Garcia filed his complaint on July 20, 2012 and service was effective when counsel for Iovate executed an acknowledgment of service on July 31, 2012. CCP § 415.30(c). Iovate did not challenge the pleading but immediately answered, also on July 31. The next substantive pleading in the case was a November 15, 2012 joint CMC statement indicating the case had settled, followed by a notice of hearing on motion for preliminary approval of settlement filed on December 24, 2012. The joint motion for preliminary approval was filed on January 22, 2013.

Branca filed his action in federal court two weeks before Garcia filed his action – on July 6, 2012. It is not clear when that complaint was served but it was probably before July 31 since NTG filed two motions to dismiss on August 3, 2012. One of these motions – for failure to state a cause of action – was filed on behalf of Iovate. Despite its knowledge of and active participation in the Branca case, Iovate did not inform this court of its existence. CRC 3.300(d) provides: "Whenever a party in a civil action knows or learns that the action or proceeding is related to another action or proceeding pending, dismissed, or disposed of by judgment in any state or federal court in California, the party must serve and file a Notice of Related Case." Regardless of whether a corresponding federal rule or common courtesy required Iovate to notify Branca of this action, Garcia and Iovate were not forthcoming regarding the existence of two pending purported class actions setting forth identical causes of action.

The court grants the motion to intervene. Branca shall file and serve his complaint in intervention (the lodged copy is unsigned).Branca can participate as a full party plaintiff in this action. He may conduct discovery. (The court notes that he intends to depose counsel. He should be aware of the limited circumstances under which that is permitted. Spectra-Physics, Inc. v. Superior Court, 198 Cal.App.3d 1487, 1496 (1988). He may also seek to stay this action in favor of the earlier-filed and served federal action.

---

© 2012 Santa Barbara County Superior Court

**EXHIBIT 1 (PAGE 5)**

**EXHIBIT 2**

```
                                          F I L E D
                                    SUPERIOR COURT of CALIFORNIA
                                      COUNTY of SANTA BARBARA

                                           JAN 3 1 2013

                                    GARY M. BLAIR, Executive Officer
                                    BY  Kristi Temple
                                        KRISTI TEMPLE, Deputy Clerk
```

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF SANTA BARBARA

| | |
|---|---|
| DANIEL GARCIA, individually, and on behalf of all others similarly situated, | Case No. CIVDS 1402915 |
| | CLASS ACTION |
| Plaintiff, | **ORDER GRANTING EX PARTE** |
| | **APPLICATION FOR LEAVE TO** |
| v. | **INTERVENE** |
| IOVATE HEALTH SCIENCES U.S.A. INC., a Delaware corporation, and DOES 1-10, Inclusive, Defendants, | Judge: Denise de Bellefeuille |
| | Hearing Date: ___ |
| | Time: ___ |
| Defendants. | Department SB 6 |
| | Complaint Filed: July 20, 2012 |
| | |
| KEVIN BRANCA, an individual, on behalf of himself and all others similarly situated, | **BY FAX** |
| Intervenor. | |

ORDER

**EXHIBIT 2 (PAGE 6)**

**ORDER**

Having read and considered the ex parte application filed by proposed Intervenor Kevin Branca for an order shortening time to file a Motion to Intervene and supporting documents, and good cause appearing therefor,

Kevin Branca's ex parte application for an order shortening time for him to file the Motion to Intervene and Request for Judicial Notice that were submitted with his ex parte application is hereby GRANTED. The Motion to Intervene and Request for Judicial Notice are deemed filed as of this date. No additional notice is necessary. The date and time for hearing the Motion to Intervene is February 24*, 2013 at ___9:30 a___.m.;

IT IS FURTHER ORDERED THAT the motion for preliminary approval of class action settlement in this action brought on behalf of Plaintiff Daniel Garcia and Defendant Iovate, currently set for February 14, 2013, is off-calendar until such time as the Court orders that the motion for preliminary approval may be heard, but in no event sooner than sixty (60) days from this date, to permit Intervenor time to conduct discovery and bring other motions related to the purpose of his Motion to Intervene. *2/4 motion  2/11 response  reply 2/15/13  oral argument is reserved.*

SO ORDERED.

Dated: ___1/31/13___

By: _Denise de Bellefeuille_
   Hon. Denise de Bellefeuille
   JUDGE OF THE SUPERIOR COURT

*\* The CMC set 2/14/13 is continued to 2/21/13 at 9:30 am to follow the motion.*

1

ORDER

**EXHIBIT 2 (PAGE 7)**

# EXHIBIT 3

1 | Scott J. Ferrell (Bar No. 202091)
      sferrell@trialnewport.com
2 | James B. Hardin (Bar No. 205071)
      jhardin@trialnewport.com
3 | Steven R. Telles (Bar No. 246514)
      stelles@trialnewport.com
4 | **NEWPORT TRIAL GROUP**
    895 Dove Street
5 | Suite 425
    Newport Beach, CA 92660
6 | Telephone: (949) 706-6464
    Facsimile: (949) 706-6469
7 |
    Attorneys for Defendant
8 | IOVATE HEALTH SCIENCES USA INC.

9 | **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

10 | **COUNTY OF SANTA BARBARA**

11 | DANIEL GARCIA, on behalf of himself and all other similarly situated,

12 | Plaintiff,

Case No.     1402915
Judge:       Denise de Bellefeuille
Dept.:       6

13 | v.

14 | IOVATE HEALTH SCIENCES U.S.A. INC., a Delaware corporation, and DOES 1-10, Inclusive,

15 |

16 | Defendants.

**IOVATE HEALTH SCIENCES, U.SA. INC.'S AMENDED OPPOSITION TO KEVIN BRANCA'S MOTION TO INTERVENE; DECLARATION OF SCOTT J. FERRELL**

Date:   February 21, 2013
Time:   9:30 a.m.
Dept.:  SB 6

18 |

Complaint Filed: July 20, 2012

26 | ///

27 | ///

28 | ///

OPPOSITION TO MOTION TO INTERVENE

**EXHIBIT 3 (PAGE 8)**

1    **MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3          The Motion to Intervene filed by counsel for Kevin Branca ("Motion") is based on erroneous

4    statements and is procedurally improper. First and foremost, there is no need for a hearing on a motion

5    to intervene because the objection process is the proper avenue to raise any arguments regarding the

6    class action settlement for this case ("Settlement")[1]. As stated in *Wershba v. Apple Computer, Inc.*, 91

7    Cal.App.4th 224, 253 (2001): "[i]ntervention would be the appropriate procedure if this were a

8    ***litigated*** class action." (emphasis added).  On the other hand, "[i]n the context of a class settlement,

9    objecting is the procedural equivalent of intervening." *Id.*; *see also, McGuigan v. City of San Diego*,

10   183 Cal.App.4th 610, 626 (2010) (stating same). And, "an objecting party's participation in a fairness

11   hearing is adequate to protect its rights." *Reed v. United Teachers Los Angeles*, 208 Cal.App.4th 322,

12   355 (2012); *see also, Cohorst v. BRE Properties, Inc.*, 2011 WL 3489781, at *5 (S.D.Cal. July 19,

13   2011) (denying motion to intervene due to availability of objection process regarding class action

14   settlement and citing to other cases issuing the same ruling).

15         Second, the Motion is a veiled attempt to question the Settlement, but the details on its fairness

16   are downplayed or overlooked, further showing there is no valid basis to intervene.  As stated in the

17   pending motion for preliminary approval on page 1, among other terms of the Settlement showing it is

18   of significant value and fair to the Class: (1) It provides substantial equitable relief.  Iovate Health

19   Sciences U.S.A., Inc. ("Iovate") has agreed to revise its labels, thus correcting its (allegedly)

20   problematic labels at issue in the Complaint; and (2) It provides substantial monetary relief.  Iovate

21   will set aside both a non-reversionary fund of $400,000 plus a minimum reserved fund of $1,000,000

22   from which Class Members can submit claims for refunds.

23         Third, the Motion makes false statements, such as by stating or insinuating the Marron and

24   Weston firms were not informed of any settlement discussions or this case even though they were so

25   informed both in writing and verbally in July of 2012. Fourth and finally, the Motion makes

26

27   _____

28   [1] The Settlement agreement was filed with the Court on January 22, 2013 with the joint motion for preliminary approval.

1   unsupported accusations of "fraud" even though the only firms who have engaged in questionable

2   conduct in relation to a class action settlement have been the Weston and Marron firms.

3          Accordingly, the Motion should be denied.

4   **II.     FACTS**

5          The Motion is based on many false premises and has substantial omissions which show that

6   intervention is not appropriate.  The position that Kirtland & Packard ("K&P") has been co-counsel

7   before with Newport Trial Group ("NTG") as somehow raising a concern is false.  Not only is there

8   zero evidence for such an audacious statement, but the two firms have taken very adverse positions to

9   each other just as they have in this case.  For example, NTG has also been involved in heated litigation

10  for several years with K&P serving as opposing counsel in the case *Joshua Morgan et al.* (represented

11  by K&P) *v. AT&T Wireless Service, Inc.* (represented by NTG attorney John C. O'Malley), Los

12  Angeles Superior Court Case No. BC318474 (filed July 14, 2004).  (Ex. A to Ferrell Decl.)  Thus, the

13  notion that NTG and K&P are somehow aligned in interest here simply is inaccurate.

14         The Motion also makes the false claim that this action and settlement discussions were

15  somehow not known to the Marron or Weston firms even though they were immediately put on notice

16  of both in the middle of last year.  On July 24, 2012 Iovate's counsel Scott Ferrell wrote an email to

17  Ronald Marron stating: "I am writing to follow up on the two previous letters and at least two voice

18  mails that my office has left for you.  My client is interested in mediating all of the 'Hydroxycut Pro

19  Clinical' litigation and would like to invite you to participate...my clients have agreed to pay for the

20  mediation." (Ex. B to Ferrell Decl.)

21         On July 26, 2012 Mr. Ferrell proposed a "meaningful mediation" to both the Marron and

22  Weston firms for settling Hydroxycut-related litigation. (Ex. C to Ferrell Decl.)  Therefore, both of

23  those firms were clearly aware of mediation and this pending litigation regarding Hydroxycut

24  products.  Yet the firms chose not to respond until filing their untimely (as discussed below) *ex parte*

25  motion to intervene in this case.

26         Another interesting fact that is not mentioned in the Motion is that the Marron firm is *currently*

27  co-counsel with NTG in several pending class action cases against Hyland's Inc. pursuant to the terms

28

1    As stated in *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 253 (2001) "[i]ntervention

2    would be the appropriate procedure if this were a ***litigated*** class action." (emphasis added).   On the

3    other hand, "[i]n the context of a class settlement, objecting is the procedural equivalent of

4    intervening." *Id.*; *see also*, *McGuigan v. City of San Diego*, 183 Cal.App.4th 610, 626 (2010) (stating

5    same). And, "an objecting party's participation in a fairness hearing is adequate to protect its rights."

6    *Reed v. United Teachers Los Angeles*, 208 Cal.App.4th 322, 355 (2012); *see also*, *Cohorst v. BRE*

7    *Properties, Inc.*, 2011 WL 3489781, at *5 (S.D.Cal. July 19, 2011) (denying motion to intervene due

8    to availability of objection process regarding class action settlement and citing to other cases issuing

9    the same ruling).

10    Second, the notion the Marron and Weston firms did not know about the potential for

11    settlement or this case are belied by the written and verbal communications discussed above. And, the

12    position on the Noticed of Related Cases is a non-starter. Because *Branca* is a federal case and this is

13    a state case, no Notice of Related Case document had to be filed in state court. As stated in *Carrasco*

14    *v. HSBC Bank USA, N.A.*, 2012 WL 646251, at *6 (N.D.Cal. Feb. 28, 2012): "California Rule of Court

15    3.300 does not apply in this case because it is a state rule. ***While Rule 3.300 explains what should***

16    ***occur if cases are brought in the same or different superior courts, it is silent as to cases that are***

17    ***brought in state and federal court***." (emphasis added).

18    As to Southern District of California Local Rule 40.1, it is not on point either since this case

19    settled; the only purpose of a Notice of Related case under that Rule would have been to show "why

20    assignment to a single district judge is or is not likely to effect a saving of judicial effort and other

21    economies."   But here that issue is irrelevant since no assignment to a single judge is required since

22    this case settled, the motion for preliminary approval is pending, and as the Motion discusses, a motion

23    stay the *Branca* case is pending.

24    Third, the fact *Branca's* counsel did not cite to case law indicating the Settlement could be

25    explored by discovery taken by it shows that if this ever does occur, it is an extremely rare or improper

26    situation.  This is likely because many settlements, including the one in this case, involve confidential

27    mediation discussions which are absolutely protected from disclosure under the mediation privilege.

28

OPPOSITION TO MOTION TO INTERVENE

**EXHIBIT 3 (PAGE 11)**

1    Similarly, the *Susman v. Lincoln American Corp.*, 561 F.2d 86 (7th Cir. 1977) case has no
2    application. There, the following conflicts existed in two cases: 1) in the first case one plaintiff and
3    one of plaintiffs' attorneys of record were members of the same law firm, meaning there existed a
4    likelihood of a conflict of interest between plaintiff's assertion of class interests and his interests in
5    attorney's fees which might be awarded his law firm; 2) in respect to the second case in which one of
6    plaintiff's attorneys was his brother, the possible recovery of plaintiff was dwarfed by attorney's fees
7    which could be awarded to his brother as class counsel.   Thus, the *Susman* case was focused on
8    conflicts created as a result of a desire to recover plaintiff attorneys' fees and did not address counsel
9    opposed to each other.

10    In addition to the other problems noted above with the Motion, it fails to note that it would
11    only be proper if it were made in a "timely" fashion. C.C.P. § 387(b). Any "unreasonable delay"
12    indicates the Motion is not timely and should be denied. *In re Yokohama Specie Bank*, 86 Cal.App.2d
13    545, 555-56 (1948). Here, unreasonable delay exists because the Motion was not filed until after the
14    Settlement was reached despite Branca's counsel knowing about this case/a potential settlement since
15    at least July 2012.   Mr. Branca cannot wait until this late stage and expect to intervene, especially
16    when the objection process is available to him.

17    **C.    *Permissive Intervention Clearly Should Not Be Granted.***

18    As discussed previously, intervention of any kind is not permitted at this stage since the
19    objection process will protect Mr. Branca's rights to address the Settlement.   However, the individual
20    arguments made in support of permissive intervention also fail.   First, they are grounded in a baseless
21    conspiracy theory surrounding the Settlement without any supporting facts. Second, the doctrines of
22    issue and claim preclusion have no relevance here since Mr. Branca can file an objection to the
23    Settlement during the final approval process.

24    Third, the analysis in the Motion provided on C.C.P. § 387(a) is woefully incomplete and
25    inaccurate. Again, Mr. Branca cannot show he has a "direct interest" that would warrant intervention
26    since he has the ability to object. Also, given the fact a preliminary approval motion is only tentative
27    in nature, Mr. Branca will certainly "enlarge the issues" if he is permitted to intervene since he will no
28    doubt pursue improper discovery that will embroil this Court in unnecessary and wasteful motion

**DECLARATION OF SCOTT J. FERRELL**

I, SCOTT J. FERRELL, declare and state as follows:

1.      I am an attorney duly licensed to practice law in the State of California and before this Court and am counsel for defendant Iovate Health Sciences U.S.A., Inc. in this action. I have personal knowledge of the following matters and, if called to testify concerning them, could do so competently.

2.      Attached hereto as Exhibit A is a true and correct copy of a 2/11/13 docket screenshot from *Joshua Morgan et al.* (represented by K&P) *v. AT&T Wireless Service, Inc.* (represented by Newport Trial Group ("NTG") attorney John C. O'Malley), Los Angeles Superior Court Case No. BC318474 (filed July 14, 2004).

3.      Attached hereto as Exhibit B is a true and correct copy of a July 24, 2012 email from me to Kevin Branca's counsel Ronald Marron.

4.      Attached hereto as Exhibit C is a true and correct copy of a July 26, 2012 email from me to Kevin Branca's counsel Ronald Marron and Gregory Weston.

5.      Attached hereto as Exhibit D is a true and correct copy of an April 26, 2012 order issued by the Honorable Judge Josephine Tucker in the case *Fernandez v. Boiron, Inc.*, et al., Case No. 11-cv-01867-JST-CW (C.D.Cal.).

6.      Attached hereto as Exhibit E is a true and correct copy of a September 29, 2011 order issued in *Red v. Kraft Foods*, Case No. cv-10-1028 (C.D. Cal.).

7.      Attached hereto as Exhibit F is a true and correct copy of a September 14, 2010 order issued in *Red v. Unilever*, Case No. 5:10-cv-00387-JW (N.D. Cal.).

8.      Attached hereto as Exhibit G is a true and correct copy of a September 30, 2010 order issued in *The Weston Firm, P.C. v. Reese Richman LLP*, Case No: 10-cv-1694 (S.D. Cal.).

9. The Marron firm is currently co-counsel with NTG in several pending class action cases against Hyland's Inc. pursuant to the terms of an October 2012 common litigation agreement. The cases mentioned in the agreement include *Acuna v. Hyland's, Inc., et al.*, San Bernardino Superior Court Case No. CIVDS 1110816, *Allen et al. v. Hyland's Inc. et al.*, C.D.Cal. Case No. 2:12-cv-1150 DMG, *Forcellati v. Hyland's Inc. et al.*, C.D.Cal. Case No. CV12-1983 GHK, *Roemmich v. Hyland's et al.*, C.D. Cal. Case NO. CV12-6256 GHK, *Sandoval v. Hyland's Inc., et al.*, San Bernardino

1    Superior Court Case No. CIVDS 1201442, and *Zabala v. Luyties Pharmacal Co.*, San Bernardino

2    Superior Court Case No. CIVDS 1201443.

3        10.    On August 31, 2010, NTG filed *Gina Delarosa, etc., et al. v. Boiron USA, Inc., etc., et*

4    *al.*, Orange County Superior Court Case No. 30-2010-00404262-CU-MT-CXC ("*Delarosa*").

5    *Delarosa* contends that Children's Coldcalm, marketed by Boiron, Inc. as a children's cold remedy, is

6    nothing more than sugar tablet that has no demonstrable health benefits.

7        11.    Just a few days later, the Marron firm began running an advertisement on a class action

8    solicitation website, www.topclassactions.com, that quotes the exact language of *Delarosa*, entirely

9    without attribution, in an "article."   The article implied that the Marron firm was prosecuting the

10    *Delarosa* lawsuit, and closed by suggesting that consumers contact the Marron firm to participate.

11        12.    Fortunately, before the Marron firm could find a plaintiff to file a copycat lawsuit, NTG

12    obtained class certification of the *Delarosa* lawsuit.

13        13.    On August 4, 2011, after conducting a thorough investigation and retaining several

14    experts, NTG filed *Gonzales, et al v. Boiron, Inc. et al.* (Case No. 3:11-cv-02066-JAH-NLS)

15    ("*Gonzales*").   In *Gonzales*, the plaintiff alleged that Boiron's Oscillococcinum ("Oscillo") product is

16    nothing more than a sugar pill, that the purported active ingredient, AnasBarbariaeHepatis et

17    CordisExtractum, does not actually exist, and that Oscillo has no effects on the flu or flu-like

18    symptoms.

19        14.    Just four days after the filing of *Gonzales*, the Marron Firm launched yet another

20    "article" on the Top Class Actions website, this one entitled "Boiron Oscillococcinum Class Action

21    Lawsuit."   This "article" quoted directly, without attribution, language in paragraph 15 of *Gonzales*

22    regarding the purported active ingredient in Oscillo.

23        15.    This time, however, the Marron firm did not stop at using NTG's work just to solicit

24    clients; the firm actually filed a lawsuit—i.e the *Gallucci* case discussed in the Motion—that

25    plagiarized directly from NTG's *Gonzales* Complaint.   The Marron firm literally cut and pasted –

26    verbatim – over 20 paragraphs from the *Gonzales* Complaint.

27        16.    Going from bad to worse, the Marron firm then secretly contacted counsel for Boiron,

28    purported to negotiate a "nationwide" settlement, and sought approval of a settlement that is unfair to

1  the Class and is currently on appeal before the Ninth Circuit. The circumstances surrounding the

2  *Gallucci* settlement are the reasons why Judge Tucker issued a strong order indicating there may have

3  been collusive conduct, or at least improper forum shopping, as discussed in the Opposition above.

4      17.    The Marron firm has also filed similar copycat lawsuits in litigation NTG has pursued

5  against other defendants.

6      I declare under penalty of perjury under the laws of the State of California that the foregoing is

7  true and correct.  Executed this 11th day of February, 2013 at Newport Beach, California.



Scott J. Ferrell

DECLARATION OF SCOTT J. FERRELL

**EXHIBIT 3 (PAGE 15)**

**From:** Scott Ferrell
**Sent:** Tuesday, July 24, 2012 10:06 PM
**To:** ron@consumeradvocates.com
**Subject:** Branca v. Iovate -- Mediation

Dear Ron,

    I hope that this letter finds you well.

    I am writing to follow up on the two previous letters and at least two voice mails that my office has left for you.  My client is interested in mediating all of the "Hydroxycut Pro Clinical" litigation and would like to invite you to participate in that litigation; my clients have agreed to pay for the mediation.

    Please let me know if you have any such interest.  Given that we are attempting to schedule that mediation within the next few weeks, we need to know if you and your client will participate in it.

    With my regards,

*Scott J. Ferrell, Esq.*

**NEWPORT TRIAL GROUP**
E:   sferrell@trialnewport.com
W   w w w . t r i a l n e w p o r t . c o m
T:   949.706.6464

**EXHIBIT 3 (PAGE 16)**

## EXHIBIT 4

1  Michael Louis Kelly - State Bar No. 82063
2  Behram V. Parekh - State Bar No. 180361
   Heather M. Peterson - State Bar No. 261303
3  KIRTLAND & PACKARD LLP
   2361 Rosecrans Avenue, Fourth Floor
   El Segundo, California  90245
4  Telephone: (310) 536-1000
   Facsimile: (310) 536-1001
5  MLK@KirtlandPackard.com
   BVP@KirtlandPackard.com
6  HMP@KirtlandPackard.com

7  Scott J. Ferrell - State Bar No. 202091
   NEWPORT TRIAL GROUP
8  A Professional Corporation
   610 Newport Center Drive, Suite 700
9  Newport Beach, CA  92660
   Tel: (949) 706-6464; Fax: (949) 706-6469
10 sferrell@trialnewport.com

11 *Counsel for Plaintiff, Desiree Worthington*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DESIREE WORTHINGTON, individually, and on behalf of all others similarly situated, | Case No. 10-cv-9795 SJO (JEMx) |
| Plaintiff, | Assigned to Judge S. James Otero |
| vs. | **NOTICE OF ASSOCIATION OF COUNSEL** |
| FIJI WATER COMPANY, LLC; ROLL INTERNATIONAL CORPORATION; and DOES 1-10, Inclusive, | |
| Defendants. | |

TO THE HONORABLE COURT, ALL PARTIES AND THEIR

ATTORNEYS OF RECORD:

    PLEASE TAKE NOTICE that Michael Louis Kelly, Behram V. Parekh and

Heather M. Peterson of Kirtland & Packard LLP are hereby associated as counsel of

record for Plaintiff DESIREE WORTHINGTON, individually, and on behalf of all

KIRTLAND & PACKARD LLP
LAW OFFICES

**EXHIBIT 4 (PAGE 17)**

1   others similarly situated in the above-referenced matter.

2          PLEASE TAKE FURTHER NOTICE that John R. Climaco of Climaco,

3   Wilcox, Peca, Tarantino & Garofoli Co., L.P.A. (55 Public Square, Suite 1950,

4   Cleveland, Ohio 44113, Tel: (216) 621-8484) is hereby associated as counsel of

5   record for Plaintiff DESIREE WORTHINGTON, individually, and on behalf of all

6   others similarly situated in the above-referenced matter.  A pro hac vice application

7   will be submitted for approval.

8   DATED:  January  6 , 2011          Respectfully submitted,

9                                       NEWPORT TRIAL GROUP

10

11

12                                      By: _____
                                            SCOTT J. FERRELL
13                                          Attorneys for Plaintiff Desiree
                                            Worthington

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRTLAND & PACKARD LLP
LAW OFFICES

99003-00001  144848.01

-2-

NOTICE OF ASSOCIATION OF COUNSEL

**EXHIBIT 4 (PAGE 18)**

# **EXHIBIT 5**

1  Michael Louis Kelly - State Bar No. 82063
   mlk@kirtlandpackard.com
2  Behram V. Parekh - State Bar No. 180361
   bvp@kirtlandpackard.com
3  Heather M. Peterson - State Bar No. 261303
   hmp@kirtlandpackard.com
4  KIRTLAND & PACKARD LLP
   2041 Rosecrans Avenue
5  Third Floor
   El Segundo, California 90245
6  Telephone: (310) 536-1000
   Facsimile: (310) 536-1001
7
8  [Additional Counsel after signature block]

9  *Counsel for Plaintiffs and all
   others similarly situated*

CONFORMED COPY
ORIGINAL FILED
SUPERIOR COURT OF CALIFORNIA
COUNTY OF LOS ANGELES

JUN 2 1 2012

John A. Clarke, Executive Officer/Clerk
BY_____, Deputy
        Mary Flores

10          **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11                  **COUNTY OF LOS ANGELES**

12

13  GOVINDA HOGAN, CATHERINE          ) Case No.   **BC 4 8 6 9 2 5**
    GIASONE, HEATHER BODOR, JAMES     )
14  MANNING, ADRIAN HARO, JEFFREY     )
    SHERRILL, JOHNNIE PACHECO, and    ) **CLASS ACTION**
15  ISABELLA JANOVICK, on behalf of   ) **COMPLAINT FOR:**
    themselves and all others similarly situated, )
16                                    ) **1. VIOLATION OF THE FALSE**
                                      ) **ADVERTISING LAWS ("FAL"); Bus. &**
17          Plaintiffs,               ) **Prof. Code §17500 et seq.;**
                                      )
18              v.                    ) **2. VIOLATION OF CALIFORNIA'S**
                                      ) **UNFAIR COMPETITION LAWS ("UCL");**
19  USPLABS, LLC, a Texas Limited Liability ) **Bus. & Prof. Code §17200 et seq.;**
    Company, and DOES 1-25, inclusive, )
20                                    ) **3. VIOLATION OF CALIFORNIA'S**
            Defendants.               ) **CONSUMER LEGAL REMEDIES ACT**
21                                    ) **("CLRA"), Civil Code §1750 et seq.**
                                      )
22                                    ) **4. VIOLATION OF THE TEXAS**
                                      ) **DECEPTIVE TRADE PRACTICES ACT;**
23                                    ) **Tex. Bus. & Com. Code §§ 17.41 et seq.**
                                      )
24                                    ) **5. VIOLATION OF THE MAGNUSON**
                                      ) **MOSS WARRANTY ACT**
25                                    )
                                      ) **6. UNJUST ENRICHMENT**
26  _____ )
                                      ) **DEMAND FOR JURY TRIAL**
27

28

02294-00001  153877.01

LAW OFFICES
KIRTLAND & PACKARD LLP

CLASS ACTION COMPLAINT

**EXHIBIT 5 (PAGE 19)**

1       Plaintiffs Govinda Hogan, Catherine Giasone, Heather Bodor, James Manning, Adrian

2 Haro, Jeffrey Sherrill, Johnnie Pacheco, and Isabella Janovick ("Plaintiffs"), on behalf of

3 themselves and all others similarly situated (collectively "Plaintiffs"), allege the following upon

4 information and belief based upon investigation of counsel, except to their own acts, which they

5 allege upon personal knowledge:

6 **PARTIES**

7 1.     Plaintiff Govinda Hogan is a resident of San Diego, California and purchased Jack3d in

8       San Diego county.

9 2.     Plaintiff Catherine Giasone is a resident of San Diego, California and purchased OxyELITE

10       Pro in San Diego county.

11 3.     Plaintiff Heather Bodor is a resident of Riverside county, California and purchased

12       OxyELITE Pro in Riverside and Los Angeles counties.

13 4.     Plaintiff James Manning is a resident of Riverside county, California and purchased

14       OxyELITE Pro in Riverside county.

15 5.     Plaintiff Adrian Haro is a resident of San Bernardino county, California and purchased

16       Jack3d in San Bernardino county.

17 6.     Plaintiff Jeffrey Sherrill is a resident of San Bernardino county, California and purchased

18       Jack3d in San Bernardino and Los Angeles counties.

19 7.     Plaintiff Johnnie Pacheco is a resident of San Bernardino county, California and purchased

20       Jack3d in San Bernardino county.

21 8.     Plaintiff Isabella Janovick is a resident of San Diego county, California and purchased

22       OxyELITE Pro in San Diego and Los Angeles counties.

23 9.     Plaintiffs relied on Defendant's representations regarding the safety, efficacy and legality of

24       OxyELITE Pro and Jack3d (jointly referred to herein as "Products"), as detailed herein, and

25       but for those representations, Plaintiffs would not have purchased or paid as much for such

26       Products.

27 //

28 //

LAW OFFICES
KIRTLAND & PACKARD LLP

10. Defendant USPLabs, LLC (hereafter "USPLabs") is a Texas limited liability company with its principal place of business in Texas.  USPLabs develops and markets Jack3d and OxyELITE Pro, and has sold such Products in California and across the United States of America.

11. The true names and capacities of the Defendants sued herein as DOES 1 through 25, inclusive, are currently unknown to Plaintiffs, who therefore sue such Defendants by fictitious names.  Each of the Defendants designated herein as a DOE is legally responsible for the unlawful acts alleged herein.  Plaintiffs will seek leave of Court to amend this Complaint to reflect the true names and capacities of the DOE Defendants when such identities become known.

12. At all relevant times, each and every Defendant was acting as an agent and/or employee of each of the other Defendants and was acting within the course and/or scope of said agency and/or employment with the full knowledge and consent of each of the Defendants.  Each of the acts and/or omissions complained of herein were alleged and made known to, and ratified by, each of the other Defendants.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over all causes of action asserted herein under the California constitution.

14. Venue is proper in Los Angeles county pursuant to Civil Code § 1780(d) because this is a county where Defendant USPLabs is doing business; Defendant's Products are sold to the public in this county.

15. Venue is proper in the county of Los Angeles, Central District, pursuant to Local Rule 2.0(b)(1) because a class action claim is being made in this action.

16. Defendant and other out of state participants can be brought before this Court pursuant to California's "long-arm" jurisdictional statute.

## FACTUAL ALLEGATIONS

17. Defendant manufactures, markets, and sells Jack3d and OxyELITE Pro as ultra-premium supplements that can provide safe and effective weight loss and muscle building.

KIRTLAND & PACKARD LLP
LAW OFFICES

1    Defendant claims its Products are university studied and that research supports its efficacy

2    and safety claims.  Defendant advertises the Products as completely legal dietary

3    supplements.  However these claims are misleading and false.  Defendant fails to warn

4    consumers that their Product contains Dimethylamylamine, also known as DMAA, which

5    is known to cause dangerous health effects.

6    18.    The form of DMAA Defendant uses in the Products is a synthetic form that is both illegal

7    and dangerous.  Defendant's advertising statements regarding the safety and legality of the

8    products are false and misleading.  The research relied upon by Defendant is inadequate

9    and/or seriously flawed with regard to Defendant's safety and efficacy claims.

10   19.    Defendant's DMAA is manufactured synthetically, and therefore unlawfully on the market

11   as an ingredient in Defendant's Products which, because they include Defendant's DMAA,

12   are both "adulterated" dietary supplements pursuant to the Food, Drug, and Cosmetic Act.

13   Assuming, *arguendo*, Defendant's DMAA is not synthetically manufactured and it is

14   instead naturally extracted from the geranium plant, Defendant's DMAA, by virtue of its

15   inclusion in its Products, makes the Products "adulterated" dietary supplements and

16   unlawfully on the market pursuant to the Food, Drug, and Cosmetic Act.

17   20.    Before marketing a product containing DMAA, manufacturers and distributors have a

18   responsibility under the law to provide evidence of the safety of its product. Defendant has

19   failed to do that, which made the Products adulterated.

20   21.    Supplement manufacturers or distributors who use certain dietary ingredients not marketed

21   in a dietary supplement prior to October 15, 1994, which includes DMAA, are responsible

22   for notifying the FDA of evidence to support their conclusion that their dietary supplements

23   containing NDIs are safe. Manufacturers or distributors must submit notification at least 75

24   days before marketing its product.

25   22.    In fact, Defendant has received a warning letter from the FDA citing the company for

26   marketing Products for which a notification had not been submitted for the use of DMAA

27   as a New Dietary Ingredient (NDI).   Defendant was warned that this requirement had not

28   been met for its marketing of its Products.

**EXHIBIT 5 (PAGE 22)**

KIRTLAND & PACKARD LLP
LAW OFFICES

23.   Defendant has also been advised that the FDA is not aware of evidence or history of use to indicate that DMAA is safe. Under the Dietary Supplement Health and Education Act of 1994 (DSHEA), manufacturers, marketers and distributors of dietary supplements are responsible for ensuring that they are marketing a safe product.

24.   DMAA is known to narrow the blood vessels and arteries, which can elevate blood pressure and may lead to cardiovascular events ranging from shortness of breath and tightening in the chest to heart attack.  The FDA has received 42 adverse event reports on products containing DMAA, some including complaints of cardiac disorders, nervous system disorders, psychiatric disorders, and death.

25.   Defendant has also been warned by the FDA that synthetically-produced DMAA is not a "dietary ingredient" and, therefore, is not eligible to be used as an active ingredient in a dietary supplement. DSHEA defines a dietary ingredient as a vitamin, mineral, amino acid, herb or other botanical, a dietary substance for use by man to supplement the diet, or a concentrate, metabolite, constituent, extract, or combination of these substances.

26.   Defendant also makes numerous efficacy and safety assertions which Defendant claims are supported by university studies, testing and other "research."  Some of the claims include:

a.   "USPLabs Athletes – Real People Real Results";

b.   "Jack3d is THE original University Studied Ultra-Concentrated Pre-Workout...";

c.   "Jack3d is now backed by multiple University studies, including double-blind, placebo-controlled research";

d.   "Of course, Jack3d has already been "put to the test" by lifters all around the globe...";

e.   "Needless to say, if you want the best, look no further than Jack3d – proven in the real world & in the lab...";

f.   "NOTHING delivers consistent workout domination for such a great price – NOTHING!";

g.   "Perfectly-executed matrix of energy-spawning, muscle-engorging compounds only found in Jack3d";

KIRTLAND & PACKARD LLP
LAW OFFICES

h.   "From Day 1, USPlabs has been focused on YOU – delivering cutting edge products that allow you to kick ass & take names..."; and

i.   Introducing a burner coined the "Super Thermogenic™" by those familiar with its effectiveness... It's called OxyELITE Pro™ & It's absolutely unmatched!".

27.   In reality, no reliable clinical research or university testing can support the above claims made by Defendant. Those "tests" and "studies" purportedly relied upon by Defendant used testing samples too small to conclusively show any real results, failed to accurately report the results, and were produced on the same day by the same open-access, online journal, *Nutrition and Metabolic Insights*.

28.   Concern about the safety and legality of DMAA has spread so wide that the United States military removed all products containing DMAA from their Army and Air Force Exchange Service and Navy Exchange stores around the world on December 3, 2011. The U.S. military was prompted to remove all DMAA products from their shelves after two soldiers suffered heart attacks and died earlier in 2011 during physical training. The deaths prompted the U.S. Army to launch an "ongoing safety review after recording a number of other serious health effects among known and potential users of products containing DMAA including kidney and liver failure, seizures, loss of consciousness, heat injury and muscle breakdown during exertion, and rapid heartbeat."

29.   Defendant's misrepresentations regarding the efficacy, safety and legality of the Products were designed to, and did, lead Plaintiffs and others similarly situated (collectively the "Class") to believe that the Products were not only effective, but legal and safe as well. Plaintiffs and members of the Class relied on Defendant's misrepresentations and would not have paid as much, if at all, for the Products but for Defendant's misrepresentations.

30.   Defendant sells Jack3d for approximately $44.99 and OxyELITE Pro for $59.99, based on the preceding false advertising claims. As a result, Defendant has wrongfully taken millions of dollars from California and nationwide consumers.

LAW OFFICES
KIRTLAND & PACKARD LLP

31.  Accordingly, Plaintiffs bring this lawsuit to enjoin the ongoing deception of thousands of California and nationwide consumers by Defendant, and to recover the funds taken by this unlawful practice.

## CLASS DEFINITIONS AND CLASS ALLEGATIONS

32.  Plaintiffs bring this action on behalf of themselves, on behalf of all others similarly situated, as members of the Class defined as follows:

National Class: The class the Plaintiffs seek to represent consists of all persons who are citizens or residents of United States of America who purchased Jack3d or OxyELITE Pro within the four years prior to the filing of the initial complaint.  Excluded from the class are Defendant, any parent, subsidiary, affiliate, or controlled person of Defendant, as well as the officers and directors of Defendant, and the immediate family member of any such person.  Also excluded is any judge who may preside over this case, and such judge's immediate family or courtroom staff.

33.  **Numerosity:** The proposed Class is so numerous that individual joinder of all its members is impracticable.  Due to the nature of the trade and commerce involved, Plaintiffs believe that the total number of Class members is at least in the thousands and members of the Class are numerous and geographically dispersed across California and the United States.  While the exact number and identities of the Class members are unknown at this time, such information can be ascertained through appropriate investigation and discovery.  The disposition of the claims of the Class members in a single class action will provide substantial benefits to all parties and to the Court.

34.  **Common Question of Law and Fact Predominate:** There are many questions of law and fact common to the representative Plaintiffs and the Class, and those questions substantially predominate over any questions that may affect individual Class members.  Common questions of fact and law include, but are not limited to, the following:

(a)  Whether Defendant's advertising or labeling are false or misleading;

(b)  Whether Defendant's Products contain DMAA;

(c)  Whether DMAA is unsafe;

CLASS ACTION COMPLAINT

**EXHIBIT 5 (PAGE 25)**

KIRTLAND & PACKARD LLP
LAW OFFICES

(d) Whether Defendant's conduct violates the CLRA or other laws;

(e) Whether Defendant's conduct is unlawful, unfair, or fraudulent under Bus. & Prof. Code Section 17200;

(f) Whether, as a result of Defendant's misconduct, Plaintiffs and the Class are entitled to damages, restitution, equitable relief and other relief, and the amount and nature of such relief.

35.  These common questions of law and fact predominate over questions that may affect individual Class members in that the claims of all Class members for each of the claims herein can be established with common proof. Additionally, a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy," because (1) Class members have little interest in individually controlling the prosecution of separate actions because the individual damages claims of each Class member are not substantial enough to warrant individual filings and (2) because the disputed advertisements are common to all Class members and because resolution of the claims of Plaintiffs will resolve the claims of the remaining Class, certification does not pose any manageability problems.

36.  **Typicality:** Plaintiffs' claims are typical of the claims of the members of the Class. Plaintiffs and all members of the Class have sustained injury and are facing irreparable harm arising out of Defendant's common course of conduct as complained of herein. The losses of each member of the Class were caused directly by Defendant's wrongful conduct as alleged herein.

37.  **Adequacy of Representation:** Plaintiffs will fairly and adequately represent and protect the interest of the Class. Plaintiffs have retained counsel with substantial experience in handling complex class action litigation. Plaintiffs and their counsel are committed to prosecuting this action vigorously on behalf of the Class and have the financial resources to do so.

38.  **Superiority of Class Action:** Plaintiffs and the members of the Class suffered and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct. A class

KIRTLAND & PACKARD LLP
LAW OFFICES

1   action is superior to other available methods for the fair and efficient adjudication of the

2   present controversy. Class members have little interest in individually controlling the

3   prosecution of separate actions because the individual damages claims of each Class

4   member are not substantial enough to warrant individual filings. In sum, for many, if not

5   most, Class members, a class action is the only feasible mechanism that will allow them an

6   opportunity for legal redress and justice.

7   39.   Adjudication of individual Class members' claims with respect to Defendant would, as a

8   practical matter, be dispositive of the interests of other members not parties to the

9   adjudication, and could substantially impair or impede the ability of other class members to

10   protect their interests.

11   **FIRST CAUSE OF ACTION**

12   **Business and Professions Code §17500**

13   **(Violation of the False Advertising Act)**

14   **(By Plaintiffs and the Class Against All Defendants)**

15   40.   Plaintiffs hereby incorporate paragraphs 1-39 above as if set forth in full.

16   41.   California Business and Professions Code (the "Code") § 17500 provides that "[i]t is

17   unlawful for any ... corporation . . . with intent . . . to dispose of . . . personal property . . . to

18   induce the public to enter into any obligation relating thereto, to make or disseminate or

19   cause to be made or disseminated . . . from this state before the public in any state, in any

20   newspaper or other publication, or any advertising device, or by public outcry or

21   proclamation, or in any other manner or means whatever, including over the Internet, any

22   statement . . . which is untrue or misleading, and which is known, or which by the exercise

23   of reasonable care should be known, to be untrue or misleading . . . ."

24   42.   Defendant misled consumers by making untrue statements and failing to disclose what is

25   required as stated in the Code, as alleged above.

26   43.   As a direct and proximate result of Defendant's misleading and false advertising, Plaintiffs

27   and the members of the Class have suffered injury in fact and have lost money or property.

28

LAW OFFICES
KIRTLAND & PACKARD LLP

44.   The misleading and false advertising described herein presents a continuing threat to Plaintiffs and the Class in that Defendant persists and continues to engage in these practices, and will not cease doing so unless and until forced to do so by this Court. Defendant's conduct will continue to cause irreparable injury to consumers unless enjoined or restrained.

## SECOND CAUSE OF ACTION

### Business and Professions Code § 17200, et seq.

### (Violation of the Unfair Competition Law)

### (By Plaintiffs and the Class Against All Defendants)

45.   Plaintiffs hereby incorporate paragraphs 1-44 above as if set forth in full.

46.   California Business and Professions Code § 17200, et seq., (the "Unfair Competition Law" or "UCL") authorizes private lawsuits to enjoin acts of "unfair competition" which includes any unlawful, unfair, or fraudulent business practice.

47.   The UCL imposes strict liability.  Plaintiffs need not prove that Defendant intentionally or negligently engaged in unlawful, unfair or fraudulent business practices—but only that such practices occurred.

48.   The material misrepresentations, concealment, and non-disclosures by Defendant and DOES 1-25 as part of their marketing and advertising of its Products is unlawful, unfair, and fraudulent business practices prohibited by the UCL.

49.   In carrying out such marketing, Defendant has violated the Consumer Legal Remedies Act, the False Advertising Law, and various other laws, regulations, statutes, and/or common law duties.  Defendant's business practices alleged herein, therefore, are unlawful within the meaning of the UCL.

50.   The harm to Plaintiffs and members of the public outweighs the utility of Defendant's practices and, consequently, Defendant's practices, as set forth fully above, constitute an unfair business act or practice within the meaning of the UCL.

51.   Defendant's practices are additionally unfair because they have caused Plaintiffs and the Class substantial injury, which is not outweighed by any countervailing benefits to

**EXHIBIT 5 (PAGE 28)**

1  consumers or to competition, and is not an injury the consumers themselves could have

2  reasonably avoided.

3  52.  Defendant's practices, as set forth above, have misled the general public in the past and will

4  mislead the general public in the future.  Consequently, Defendant's practices constitute an

5  unlawful and unfair business practice within the meaning of the UCL.

6  53.  Pursuant to California Business and Professions Code § 17204, an action for unfair

7  competition may be brought by any "person . . . who has suffered injury in fact and has lost

8  money or property as a result of such unfair competition."  Defendant's wrongful

9  misrepresentations and omissions have directly and seriously injured Plaintiffs and the

10  putative Class by causing them to pay for a product because they relied on the false and

11  misleading marketing and advertising statements of Defendant.

12  54.  The unlawful, unfair, and fraudulent business practices of Defendant are ongoing and

13  present a continuing threat that members of the public will be misled into purchasing

14  OxyELITE Pro and Jack3d based on the belief that Products were safe when, in fact, this is

15  not the case.

16  55.  Pursuant to the UCL, Plaintiffs are entitled to preliminary and permanent injunctive relief

17  ordering Defendant to cease this unfair competition, as well as disgorgement and restitution

18  to Plaintiffs and the Class of all of Defendant's revenues associated with Defendant's

19  unfair competition, or such portion of those revenues as the Court may find equitable.

20  **THIRD CAUSE OF ACTION**

21  **Civil Code § 1770, et seq.**

22  **(Violation of the Consumer Legal Remedies Act)**

23  **(By Plaintiffs and the Class Against All Defendants)**

24  56.  Plaintiffs hereby incorporate paragraphs 1-55 above as if set forth in full.

25  57.  The Consumer Legal Remedies Act ("CLRA") creates a non-exclusive statutory remedy for

26  unfair methods of competition and unfair or deceptive acts or business practices.  *See*

27  *Reveles v. Toyota by the Bay*, 57 Cal. App. 4th 1139, 1164 (1997).  Its self-declared

28  purpose is to protect consumers against these unfair and deceptive business practices, and

KIRTLAND & PACKARD LLP
LAW OFFICES

1    to provide efficient and economical procedures to secure such protection. Cal. Civil Code

2    § 1760 et seq. The CLRA was designed to be liberally construed and applied in favor of

3    consumers to promote its underlying purposes. *Id.*

4  58.  Plaintiffs have standing to pursue this claim as Plaintiffs purchased Products believing that

5    they were safe. One of the reasons that Plaintiffs purchased the Products is because they

6    believed the Products were safe and backed by science, based on the statements and lack of

7    disclosures or warnings by Defendant. Plaintiffs relied on Defendant's advertising and

8    have been damaged because the Products they purchased are not safe; had they known this,

9    they would have either not bought the Products or paid less for them.

10  59.  Defendant's wrongful business practices constituted, and constitute, a continuing course of

11    conduct in violation of the California CLRA since Defendant is still representing that its

12    Products have characteristics which are false and misleading, and have injured Plaintiffs

13    and the Class.

14  60.  More specifically, Plaintiffs allege that Defendant has violated paragraphs 5, 7, and 9 of

15    California Civil Code § 1770(a) by engaging in the unfair and/or deceptive acts and

16    practices set forth herein. Defendant's unfair and deceptive business practices in carrying

17    out the marketing program described above were and are intended to and did and do result

18    in Plaintiffs and Class members purchasing Defendant's Products, in violation of the

19    CLRA. Cal. Civil Code § 1770, et seq.

20  61.  As a result of Defendant's unfair and/or deceptive business practices, Plaintiffs and all

21    consumers who purchased Defendant's Products have suffered damage and lost money in

22    that they paid for Products that did not have the characteristics and benefits as represented.

23    Plaintiffs seek and are entitled to an order enjoining Defendant from continuing to engage

24    in the unfair and deceptive business practices alleged herein.

25  62.  Pursuant to Section 1782 of the CLRA, Plaintiff intends to notify Defendant in writing of

26    the particular violations of Section 1770 of the CLRA (the "Notice Letter"). If Defendant

27    fails to comply with Plaintiff's demands within thirty days of receipt of the Notice Letter,

28    pursuant to Section 1782 of the CLRA, Plaintiff will amend this Complaint to further

LAW OFFICES
KIRTLAND & PACKARD LLP

02294-00001  153877.01

-12-

1    request damages under the CLRA.

2                            **FOURTH CAUSE OF ACTION**

3                    **Violation of the Texas Deceptive Trade Practices Act**

4                        **(Tex. Bus. & Com. Code §§ 17.41 et seq.)**

5                    **(By Plaintiffs and the Class Against All Defendants)**

6    63.   Plaintiffs hereby incorporate paragraphs 1-62 above as if set forth in full.

7    64.   The Texas Deceptive Trade Practices Act ("DTPA") creates statutory remedies for false,

8          misleading, or deceptive acts or practices that are cumulative of other remedies. *See Vail v.*

9          *Texas Farm Bureau Mut. Ins. Co.*, 754 S.W.2d 129, 136 (Tex. 1988). Its self-declared

10         purpose is to protect consumers against false, misleading, and deceptive business practices,

11         unconscionable actions, and breaches of warranty and to provide efficient and economical

12         procedures to secure such protection.  Tex. Bus. & Com. Code § 17.44.  The DTPA was

13         designed to be liberally construed and applied in favor of consumers to promote its

14         underlying purposes. *Id.*

15   65.   Plaintiffs and members of the Class are consumers, as described in § 17.45(4) of the DTPA,

16         who purchased or sought to purchase goods or services from Defendant.

17   66.   Defendant employed false, misleading, or deceptive acts or practices, as specifically

18         enumerated in § 17.46 of the DTPA, which were relied on by Plaintiffs to their detriment

19         and which were the producing cause of Plaintiffs' injury.

20   67.   More specifically, Plaintiffs allege that Defendant has violated subdivisions 5 and 7 of

21         Texas Business and Commerce Code § 17.46(b):

22         a.    Defendant has represented that its goods or services have sponsorship, approval,

23               characteristics, ingredients, uses, benefits, or quantities which they do not have.

24               Tex. Bus. & Com. Code § 17.46(b)(5).

25         b.    Defendant has represented that its goods or services are of a particular standard,

26               quality, or grade, or that goods are of a particular style or model, if they are of

27               another. Tex. Bus. & Com. Code § 17.46(b)(7).

28   68.   As a result of reliance on Defendant's false, misleading, or deceptive acts or practices,

LAW OFFICES
KIRTLAND & PACKARD LLP

1   Plaintiffs and all consumers who purchased Defendant's Products have suffered damage

2   and lost money in that they paid for a Product that did not have the characteristics and

3   benefits as represented.  Plaintiffs seek and are entitled to an order enjoining Defendant

4   from continuing to engage in the false, misleading, or deceptive acts or practices alleged

5   herein.

6   69.   Defendant's actions impact the public interest because Plaintiffs and the Class were injured

7   in exactly the same way as thousands of others purchasing Defendant's Products containing

8   DMAA.

9   ### FIFTH CAUSE OF ACTION

10   ### Breach of the Magnuson Moss Warranty Act

11   ### (By Plaintiffs and the Class Against All Defendants)

12   70.   Plaintiffs hereby incorporate paragraphs 1-69 above as if set forth in full.

13   71.   The Products are consumer products as defined in 15 U.S.C. § 2301(1).

14   72.   Plaintiffs and all the members of the Class are consumers as defined in 15 U.S.C. §2301(3).

15   73.   Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) & (5).

16   74.   Because Defendant knew that it was in breach of the written and implied warranties at the

17   time they sold the Products to Plaintiffs and the Class, and because the failure of the

18   Products to fulfill the warranties cannot be cured, Plaintiffs were under no obligation to

19   give Defendant an opportunity to cure pursuant to 15 U.S.C. § 2310(e). Alternatively, out

20   of an abundance of caution, Plaintiffs and the Class gave Defendant such opportunity to

21   cure by a letter dated February 17, 2012.

22   75.   In connection with its sale of the Products, Defendant issued written warranties as defined

23   in 15 U.S.C. § 2301(6) via their written advertisements and product labeling which

24   warranted that the Products were safe and legal such as statements that there had been

25   multiple University studies, including double-blind, placebo-controlled research and that

26   the Products had been put to the test.

27   76.   In connection with the sale of the Products, Defendant gave an implied warranty as defined

28   in 15 U.S.C. § 2301(7); namely, the implied warranty of merchantability. Specifically,

LAW OFFICES
KIRTLAND & PACKARD LLP

02294-00001  153877.01

-14-

1   Defendant warranted that the Products were fit for their ordinary purpose, would pass

2   without objection in the trade, and would conform to the promises and affirmations of fact

3   made on their containers or labels.

4   77.   Defendant is liable to Plaintiffs and the Class pursuant to 15 U.S.C. § 2310(d)(1), because

5   they failed to comply with its written warranties and the implied warranty of

6   merchantability as the Products are not safe or legal because of the DMAA ingredient

7   within them.

8   78.   Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and the Class are entitled to recover the

9   damages caused to them by Defendant's breaches of written and implied warranties, which

10   damages either constitute a refund of the full purchase prices of the Products or the

11   difference in value between the Products as warranted and the Products as actually sold. In

12   addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiffs and the Class are entitled to recover

13   a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based

14   on actual time expended) determined by the Court to have been reasonably incurred by

15   Plaintiffs and the Class for and in connection with the commencement and prosecution of

16   this action.

17   ## SIXTH CAUSE OF ACTION

18   ### Unjust Enrichment

19   **(By Plaintiffs and the Class Against All Defendants)**

20   79.   Plaintiffs hereby incorporates paragraphs 1-78 above as if set forth in full.

21   80.   This claim is asserted in the alternative on behalf of Plaintiffs and the members of the

22   Class, to the extent that any contracts do not govern the entirety of the subject matter of the

23   disputes with Defendant.

24   81.   As a direct and proximate result of Defendant's misconduct as set forth above, Defendant

25   has been unjustly enriched.

26   82.   Specifically, by its misconduct described of herein, Defendant has accepted a benefit

27   (monies paid by Plaintiffs and Class members).

28   83.   As a result of Defendant's misconduct described herein, the retention of that benefit (the

**EXHIBIT 5 (PAGE 33)**

KIRTLAND & PACKARD LLP
LAW OFFICES

1   monies) would be inequitable.

2                  **PRAYER FOR RELIEF**

3       WHEREFORE, Plaintiffs, individually and on behalf of the Class, pray for relief and

4   judgment as follows:

5       1.     For preliminary and permanent injunctive relief enjoining Defendant, its agents,

6   servants and employees, and all persons acting in concert with them, from engaging in, and

7   continuing to engage in, the unfair, unlawful and/or fraudulent business practices alleged above

8   and that may yet be discovered in the prosecution of this action;

9       2.     For certification of the putative class;

10      3.     For restitution and disgorgement of all money or property wrongfully obtained by

11   Defendant by means of its herein-alleged unlawful, unfair, and fraudulent business practices;

12      4.     For an accounting by Defendant for any and all profits derived by Defendant from

13   its herein-alleged unlawful, unfair, and/or fraudulent conduct and/or business practices;

14      5.     An award of statutory damages according to proof, except that no damages are

15   currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this

16   time;

17      6.     An award of general damages according to proof, except that no damages are

18   currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this

19   time;

20      7.     An award of special damages according to proof, except that no damages are

21   currently sought on Plaintiffs' Cause of Action regarding the Consumer Legal Remedies Act at this

22   time;

23      8.     Exemplary damages, except that no damages are currently sought on Plaintiffs'

24   Cause of Action regarding the Consumer Legal Remedies Act at this time;

25      9.     For attorneys' fees and expenses pursuant to all applicable laws including, without

26   limitation, Code of Civil Procedure §1021.5, the CLRA, and the common law private attorney

27   general doctrine;

28      10.    For costs of suit; and

LAW OFFICES
KIRTLAND & PACKARD LLP

11.   For such other and further relief as the Court deems just and proper.

DATED: June 19, 2012                    KIRTLAND & PACKARD LLP

                                        By: _____
                                            MICHAEL LOUIS KELLY
                                            BEHRAM V. PAREKH
                                            HEATHER M. PETERSON

                                        NEWPORT TRIAL GROUP
                                        A Professional Corporation
                                        Scott J. Ferrell, Bar No. 202091
                                        sferrell@trialnewport.com
                                        James B. Hardin, Bar No. 205071
                                        jhardin@trialnewport.com
                                        Victoria C. Knowles, Bar No. 277231
                                        vknowles@trialnewport.com
                                        895 Dove Street, Suite 425
                                        Newport Beach, CA 92660
                                        Tel: (949) 706-6464; Fax: (949) 706-6469

                                        *Counsel for Plaintiffs and all others similarly situated*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury for all causes of actions so triable.

DATED: June 19, 2012

KIRTLAND & PACKARD LLP

By: _____

MICHAEL LOUIS KELLY
BEHRAM V. PAREKH
HEATHER M. PETERSON

NEWPORT TRIAL GROUP
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@trialnewport.com
James B. Hardin, Bar No. 205071
jhardin@trialnewport.com
Victoria C. Knowles, Bar No. 277231
vknowles@trialnewport.com
895 Dove Street, Suite 425
Newport Beach, CA  92660
Tel: (949) 706-6464; Fax: (949) 706-6469

*Counsel for Plaintiffs and all others similarly situated*

# **EXHIBIT 6**

1  Michael Louis Kelly - State Bar No. 82063
2  Behram V. Parekh - State Bar No. 180361
   KIRTLAND & PACKARD LLP
3  2361 Rosecrans Avenue, Fourth Floor
   El Segundo, California 90245
4  Tel: (310) 536-1000
   Fax: (310) 536-1001

5  Scott J. Ferrell - State Bar No. 202091        Paul D. Stevens - State Bar No. 207107
   NEWPORT TRIAL GROUP                            Ryan J. Clarkson - State Bar No. 257074
6  610 Newport Center Drive, Suite 700            MILSTEIN, ADELMAN & KREGER LLP
   Newport Beach, CA 92660                        2800 Donald Douglas Loop North
7  Tel: (949) 717-3000                            Santa Monica, CA 90405
   Fax: (949) 717-3100                            Tel: (310) 396-9600
8                                                 Fax: (310) 396-9635

9  *Counsel for Plaintiffs*

10 Ana Cláudia C. Guedes - State Bar No. 244386
   1545 Faraday Avenue, Suite 101
11 Carlsbad, CA 92008
   Tel.: (760) 438-4597
12 Fax: (760) 603-0715

13 *Counsel for Defendants*

14              SUPERIOR COURT FOR THE STATE OF CALIFORNIA

15                     FOR THE COUNTY OF LOS ANGELES

16 EDWARD SMART, and SHANE RABINEAU, )  Case No. BC407882
   individually, and on behalf of all others )  Case No. BC426780 (consolidated for all
17 similarly situated,                    )  proceedings)
                                          )
18              Plaintiffs,               )  **CLASS ACTION**
                                          )
19              vs.                       )  Assigned for All Purposes to:
                                          )  The Honorable Michael L. Stern
20 OBESITY RESEARCH INSTITUTE, LLC, a     )
   California limited liability company;  )  **SETTLEMENT AGREEMENT AND**
21 ZYLOTRIM LLC, a California limited liability )  **RELEASE**
   company; BRYAN CORLETT, an individual; )
22 and DOES 1-250, Inclusive,             )  Hearing Date: October 4, 2010
                                          )  Hearing Time: 8:30 a.m.
23              Defendants.               )  Dept: 62
                                          )
24

25

26

27

28

02209-00001  014014701

EX 1

KIRTLAND & PACKARD LLP
LAW OFFICES

T1/12/16

**EXHIBIT 6 (PAGE 37)**

1    This Settlement Agreement and Release ("Agreement") is made and entered into by and

2    among the following parties in *Smart v. Obesity Research Institute, LLC, et al.*, Los Angeles

3    Superior Court Case No. BC 407882 (the "Litigation"): (i) the Representative Plaintiff Edward

4    Smart ("Smart") in his individual capacity and as a representative of the Settlement Class, by and

5    through his counsel of record in the Litigation; (ii) the Representative Plaintiff Shane Rabineau

6    ("Rabineau") in his individual capacity and as a representative of the Settlement Class, by and

7    through his counsel of record in the Litigation (collectively, "Plaintiffs") and (iii) Obesity

8    Research Institute, LLC, a California limited liability company ("ORI"); (iv) Zylotrim LLC, a

9    California limited liability company ("Zylotrim"); (v) the parents, subsidiaries, related entities,

10    and assigns of each entity defendant (collectively with ORI and Zylotrim, the "Entity

11    Defendants"), and (vi) Bryan Corlett, an individual (collectively, "Defendants"), by and through

12    their counsel of record in the Litigation.  Smart, Rabineau, and all Defendants are collectively

13    referred to herein as the "Settling Parties."  This Agreement is intended by the Settling Parties to

14    fully, finally and forever resolve, discharge and settle the Released Claims, upon and subject to the

15    terms and conditions hereof.

16    **I.     THE LITIGATION**

17    This Agreement is made for the following purpose and with reference to the following

18    facts:

19    **A. The Lipozene Litigation**

20    On February 17, 2009, Plaintiff David Atkins ("Atkins"), on behalf of himself and a

21    proposed class, filed his original complaint seeking injunctive relief and restitution against

22    defendant Obesity Research Institute ("ORI") and Bryan Corlett regarding ORI's herbal weight

23    loss supplement called Lipozene (the "Lipozene litigation").  Plaintiff alleged that Defendant

24    uniformly made several establishment and performance claims on every product label, website,

25    print and television advertisement for its Lipozene weight loss pill. Plaintiff alleged that these

26    uniform statements related to the Lipozene product (and its active ingredient, Amorphophallus

27    Konjac or "glucommanan") constituted per se violations of the UCL, FAL, and CLRA.  Plaintiff

28    alleged that based on these false claims, Defendant charged consumers a premium for Lipozene

02205-00001  0140147.01    -2-

SETTLEMENT AGREEMENT AND RELEASE

**EXHIBIT 6 (PAGE 38)**

1   compared to other glucommanan dietary supplements which do not make the aggressive

2   advertising claims that Defendant makes for Lipozene.  ORI answered the Complaint on April 1,

3   2009.  Discovery ensued and Plaintiff filed a motion for class certification on November 5, 2009.

4        B. The Zylotrim Litigation

5        On November 9, 2009, plaintiff Edward Smart sent a demand letter pursuant to the

6   Consumers Legal Remedies Act ("CLRA") to defendant Zylotrim, LLC, requesting that remedial

7   action be taken.  On November 24, 2009, the representative plaintiff Edward Smart (the "*Smart*

8   case") filed his original complaint on behalf of a purported class, alleging violations of

9   California's unfair competition law, *California Business & Professions Code* §17200 *et seq.*,

10  violation of the CLRA, *California Civil Code* §1750 *et seq.*, unjust enrichment, and breach of

11  warranty.  The *Smart* case concerns a weight loss supplement called Zylotrim.  Plaintiff alleges

12  that the claims by Defendants regarding Zylotrim are false and/or misleading.

13       C. Consolidation of Cases

14       Because the *Rabineau* and *Smart* cases alleged almost identical class-wide claims based on

15  different weight loss supplements produced by Defendants, Plaintiffs submitted Notices of Related

16  Cases and the Settling Parties Stipulated to the consolidation of the cases for pretrial purposes.

17  The Amended (consolidated) Complaint was filed on January 19, 2010.  Once this Amended

18  Complaint was filed, additional depositions and discovery occurred, along with additional

19  negotiations.

20       On or about March 12, 2010, the Settling Parties, by and through their counsel of record,

21  executed a Compromise Term Sheet at a mediation presided over by Justice Steven Stone, which

22  summarized the substantive terms of their agreement to resolve this Litigation.

23  II.    DEFENDANTS' STATEMENT AND DENIALS OF WRONGDOING AND

24      LIABILITY

25       Neither this Agreement nor anything contained herein, nor any act or thing done in

26  connection herewith, is intended to be or shall be construed or deemed an admission by any

27  Defendant of any fact, contention, claim, liability, fault or wrongdoing whatsoever.  Defendants

28  have each denied and continue to deny each and all of the claims and contentions alleged by the

02209-00001  014017.01        **-3-**

**EXHIBIT 6 (PAGE 39)**

1   Representative Plaintiffs in the Litigation, or that could have been alleged in the Litigation.

2       Defendant ORI maintains that: (i) Every claim made in each advertisement for Lipozene®

3   is substantiated by credible, independent, scientific evidence, including clinical trials; (ii) each

4   advertisement released for Lipozene® undergoes careful scrutiny, often including scrutiny of

5   claim substantiation by administrative agencies such as the FDA and the FTC, as well as pseudo-

6   regulatory bodies such as the National Advertising Review Council (NARC); (iii) full relief in the

7   form of a refund has always been made available to any dissatisfied customers of Lipozene®; (iv)

8   ORI at all times during product development and marketing acts in good faith to provide quality

9   dietary supplements based on known scientific principles.

10      Defendant Zylotrim, LLC maintains that: (i) Every claim made in each advertisement for

11  Zylotrim® is substantiated by credible, independent, scientific evidence, including clinical trials;

12  (ii) each advertisement released for Zylotrim® undergoes careful scrutiny, often including

13  scrutiny of claim substantiation by administrative agencies such as the FDA and the FTC, as well

14  as pseudo-regulatory bodies such as the National Advertising Review Council (NARC); (iii) full

15  relief in the form of a refund has always been made available to any dissatisfied customers of

16  Zylotrim®; (iv) Zylotrim LLC at all times during product development and marketing acts in good

17  faith to provide quality dietary supplements based on known scientific principles.

18      Having taken into account the expense of litigation, among other things, Defendants have

19  nonetheless concluded that substantial time and expense will be saved, and their interests will be

20  served by settling all claims against them in the manner and upon the terms and conditions set

21  forth in this Agreement. Defendants have therefore agreed to enter into this Agreement to avoid

22  the further expense, inconvenience, and distraction of burdensome and protracted litigation, and to

23  be completely free of any further claim or controversy arising out of the sale of Lipozene®,

24  Zylotrim®, and any other of Defendants' or Defendants' affiliates' products. .

25  III.    BENEFITS OF SETTLEMENT

26      The Representative Plaintiffs believe that the claims asserted in the Litigation have merit.

27  However, the Representative Plaintiffs and Representative Plaintiffs' Counsel recognize and

28  acknowledge the expense and length of continued proceedings necessary to prosecute the

KIRTLAND & PACKARD LLP
LAW OFFICES

02209-00001  0140147.01                                 -4-

**EXHIBIT 6 (PAGE 40)**

KIRTLAND & PACKARD LLP

LAW OFFICES

1   Litigation against Defendants through trial and appeals.  The Representative Plaintiffs and

2   Representative Plaintiffs' Counsel also have taken into account the uncertain outcome and the risk

3   of any litigation, especially in complex actions such as this Litigation, as well as the difficulties

4   and delays inherent in such litigation.  The Representative Plaintiffs and Representative Plaintiffs'

5   Counsel are mindful of the inherent problems of proof under, and possible defenses to, state

6   consumer law violations and other claims asserted in the complaints.  The Representative

7   Plaintiffs and Representative Plaintiffs' Counsel believe that the Settlement set forth in the

8   Agreement confers substantial benefits upon the Settlement Class and each of the Settlement Class

9   Members.  Based on their evaluation, the Representative Plaintiffs and Representative Plaintiffs'

10  Counsel have determined that the Settlement set forth in the Agreement is in the best interests of

11  the Representative Plaintiffs and the Settlement Class and each of the Settlement Class Members.

12  **IV.    TERMS OF THE SETTLEMENT AGREEMENT AND RELEASE**

13          **A.    The Settlement Agreement**

14          1.     The named plaintiffs, the class, and plaintiffs' counsel in this action ("the Settling

15  Plaintiffs") shall provide Defendants, their parents, subsidiaries, related entities, successors,

16  affiliates, agents, officers, directors, distributors, manufacturers, retailers, advertisers and/or

17  assigns, if any, including, without limitation, any defendant that has ever been named in this

18  lawsuit, with a release of any and all claims, allegations or disputes of any kind that the putative

19  class may have, whether known or unknown, related to the packaging, labeling, ingredients,

20  advertising and/or promotion of Defendants' products (inclusive of a waiver pursuant to Civil

21  Code Section 1542).  All of the parties released in this paragraph shall also provide a reciprocal

22  release to the named plaintiffs, and their attorneys and agents.

23          2.     Upon execution of the settlement agreement and final approval by the Court, the

24  case will be settled on a nationwide class-wide basis.  The putative settlement class will include all

25  consumers located within the United States, its territories, and military facilities who purchased

26  one of Defendants' products at issue, related to or arising out of the packaging, labeling,

27  advertising and/or promotion of any of Defendants' products.

28          3.     Upon execution of the settlement agreement and final approval by the Court, which

03209-00001  814034701                          -5-

**EXHIBIT 6 (PAGE 41)**

1 shall be conditions precedent to these obligations by ORI, ORI shall:

2     (a)    Make changes to product packaging and advertising to its Lipozene product, as

3              detailed in Section IV.B;

4     (b)    Provide refunds (up to a maximum of $29.95 per class member) to all putative class

5              members who purchased Lipozene and follow claim procedures, up to an aggregate

6              maximum of $25,000 subject to subsection (c);

7     (c)    Report in writing to Mr. Rabineau's counsel on a bi-weekly basis regarding: the

8              number of claims made, the number of claims approved, the number of claims

9              rejected and, if any rejections, the reason for such rejection.  The Settling Parties

10             agree that the $25,000 maximum is adequate to cover all anticipated claims.  If

11             aggregate claims exceed $25,000, they will be paid to claimants on a pro rata basis.

12             If aggregate claims exceed $25,000 for claims related to Lipozene while aggregate

13             claims are less than $25,000 for claims related to Zylotrim, any remaining monies

14             from the Zylotrim funds shall be used towards the pro rata calculation and payment

15             of Lipozene claims.

16     4.    Upon execution of the settlement agreement and final approval by the Court, which

17 shall be conditions precedent to these obligations by Zylotrim, Zylotrim shall:

18     (a)    Discontinue the sale of Zylotrim except as to sell-through remaining inventory;

19     (b)    Provide refunds (up to a maximum of $29.95 per class member) to all putative class

20              members who purchased Zylotrim and who follow claim procedures, up to an

21              aggregate maximum of $25,000 subject to subsection (c);

22     (c)    Report in writing to Mr. Smart's counsel on a bi-weekly basis regarding: the

23              number of claims made, the number of claims approved, the number of claims

24             rejected and, if any rejections, the reason for such rejection.  The Settling Parties

25             agree, based upon representations of Zylotrim, that the $25,000 maximum is

26             adequate to cover all anticipated claims.  If aggregate claims exceed $25,000, they

27             will be paid to claimants on a pro rata basis.  If aggregate claims exceed $25,000

28             for claims related to Zylotrim while aggregate claims are less than $25,000 for

KIRTLAND & PACKARD LLP
LAW OFFICES

SETTLEMENT AGREEMENT AND RELEASE

**EXHIBIT 6 (PAGE 42)**

1   claims related to Lipozene, any remaining monies from the Lipozene funds shall be

2   used towards the pro rata calculation and payment of Zylotrim claims.

3   5.   The Plaintiffs may each apply to the Court for an award of fees and costs to be paid

4   as follows: ORI agrees to attorney's fees and costs not to exceed $146,250 inclusive of interest,

5   any portion of which may be designated as catalyst fees by counsel in the ORI litigation; Zylotrim

6   agrees to attorney's fees and costs not to exceed $178,750 inclusive of interest, any portion of

7   which may be designated as catalyst fees by counsel in the Zylotrim litigation. The Entity

8   Defendants stipulate to the award of such fees and that such fees against each of them are

9   reasonable. Fees awarded by the Court shall be paid no later than 14 days after final approval of

10  the settlement by the Superior Court.

11  6.   Payment of all costs and expenses associated with the administration of the

12  settlement shall be made directly by the Entity Defendants.  The Settling Parties agree that notice

13  pursuant to California Rule of Court 3.766, through direct e-mail, publication on Defendants'

14  websites, and printed notice published jointly by the Entity Defendants in a national publication is

15  the most practical and effective notice available under the circumstances.

16  7.   ORI shall not oppose, in any way, an additional request for an incentive payment

17  up to $2,500 to class representative Shane Rabineau, and Zylotrim shall not oppose in any way an

18  additional request for an incentive payment up to $2,500 to class representative Edward Smart,

19  which shall be payable by Defendants at the same time and on the same terms as Plaintiffs'

20  attorneys' fees.

21  8.   This settlement shall not be deemed an admission of liability or wrongdoing on the

22  part of Defendants, their parents, subsidiaries, related entities, successors, affiliates, agents,

23  officers, directors, distributors, manufacturers, advertisers, retailers and/or its assigns, including,

24  without limitation, any defendant that has ever been named in this lawsuit, and it may not be used

25  in any proceeding for that purpose.  Defendants each deny all liability.

26  9.   Attorneys' fees awarded by the Court shall be paid by the Entity Defendants to an

27  agreed-upon escrow, rather than directly to Plaintiffs' various counsel, in the event the settlement

28  is subject to objections.  In the event of an objection to the settlement, said fees will be held in

02209-00001 6140147.01                    -7-

SETTLEMENT AGREEMENT AND RELEASE

KIRTLAND & PACKARD LLP
LAW OFFICES

17/21/13

**EXHIBIT 6 (PAGE 43)**

1   escrow until the settlement becomes final and all appellate rights with respect to such objection

2   have been extinguished or exhausted.

3      10.   This litigation was resolved over multiple mediation sessions during arms length

4   negotiations before a mediator. Any disputes involving this agreement shall be resolved through

5   binding arbitration before Justice Stone with the prevailing party entitled to attorneys' fees.

6      11.   This agreement contains all material terms agreed to by the parties and shall be

7   binding and fully enforceable as written. This agreement is contingent upon court approval.

8     **B.**    **Changes to Product Packaging**

9     Pursuant to Section IV.A.3(a) above, the parties have agreed to the following changes to

10   ORI's product packaging for Lipozene®. No changes will be made to Zylotrim® product

11   packaging, as Zylotrim, LLC has agreed that it is only selling off remaining inventory and

12   discontinuing sale of the product. Such changes are as follows:

13     1.   ORI will ensure all its dosage instructions and advertisements reflect the

14   relationship between dosage and clinically-supported results by including a statement such as (for

15   example only) "Based on clinical studies, the recommended dosage for optimum results is the

16   daily maximum dosage of 6 capsules per day," or by providing dosage instructions consistent with

17   clinically-supported results data. Any reference to clinical studies or the results of clinical studies

18   shall be accompanied by dosage information which is consistent with the clinically-supported

19   results data for such studies.

20     2.   Defendants will not use the following specific statements in future advertising.

21      •   Lipozene® should be considered before "liposuction"

22      •   "Lipozene® is backed by 12 clinical studies"

23      •   "amazing weight loss"

24      •   "dramatic weight loss"

25      •   any claim that single order use of Lipozene® leads to long-term weight loss

26         or that weight loss will be maintained after discontinuing use of Lipozene®

27      •   "begin to uncover lean muscle"

28      •   "begin to reveal a flat tummy, ripped abs, tight buns, and firm thighs"

KIRTLAND & PACKARD LLP
LAW OFFICES

02209-00001  9140147.01     -8-

SETTLEMENT AGREEMENT AND RELEASE

**EXHIBIT 6 (PAGE 44)**

1     -    the phrase "Fit & Lean with Lipozene®" shall be used solely in connection

2        with the current Club program and not in any other context nor in any

3        television advertising.

4   3.   Defendants may, under the terms of this agreement, in future advertising:

5     -    continue to make comparative or background references to obesity rates and

6        surgical procedures that address fat and obesity as long as such references

7        do not equate the efficacy of Lipozene® with surgical procedures;

8     -    continue to make statements referring to the existence of scientific evidence

9        and clinical studies that support the efficacy of glucommanan products, so

10       long as the dosage instructions are consistent with the dosage shown to be

11       effective as stated in Section IV.B.1.

12 DATED: September 23, 2010                 **KIRTLAND & PACKARD LLP**

13

14                      By:   _____

15                          Michael Louis Kelly
                         Behram V. Parekh

16                      **NEWPORT TRIAL GROUP**

17

18                      By:   _____
                         Scott J. Ferrell

19

20                      **MILSTEIN, ADELMAN & KREGER LLP**

21

22                      By:   _____

23                          Paul D. Stevens
                         Ryan J. Clarkson

24                          *Counsel for Plaintiffs*

25

26                      By:   _____

27                          Ana Cláudia C. Guedes
                         *Counsel for Defendants*

28

KIRTLAND & PACKARD LLP
LAW OFFICES

82209-00001 0810147.01

-9-

SETTLEMENT AGREEMENT AND RELEASE

**EXHIBIT 6 (PAGE 45)**

1        -       the phrase "Fit & Lean with Lipozene®" shall be used solely in connection

2               with the current Club program and not in any other context nor in any

3               television advertising.

4     3.    Defendants may, under the terms of this agreement, in future advertising:

5        -       continue to make comparative or background references to obesity rates and

6               surgical procedures that address fat and obesity as long as such references

7               do not equate the efficacy of Lipozene® with surgical procedures;

8        -       continue to make statements referring to the existence of scientific evidence

9               and clinical studies that support the efficacy of glucommanan products, so

10             long as the dosage instructions are consistent with the dosage shown to be

11             effective as stated in Section IV.B.1.

12  DATED: September 15, 2010              **KIRTLAND & PACKARD LLP**

13

14                      By:

15                             Michael Louis Kelly
                                Behram V. Parekh

16                        **NEWPORT TRIAL GROUP**

17

18                      By:

19                             Scott J. Ferrell

20                      **MILSTEIN, ADELMAN & KREGER LLP**

21

22                      By:

23                           Paul D. Stevens
                             Ryan J. Clarkson

24                      *Counsel for Plaintiffs*

25

26                      By:

27                           Ana Cláudia C. Guedes

28                      *Counsel for Defendants*

KIRTLAND & PACKARD LLP

02209-00001 01401*7.01          -9-
SETTLEMENT AGREEMENT AND RELEASE

**EXHIBIT 6 (PAGE 46)**

1      •   the phrase "Fit & Lean with Lipozene®" shall be used solely in connection

2        with the current Club program and not in any other context nor in any

3        television advertising.

4   3.  Defendants may, under the terms of this agreement, in future advertising:

5      •   continue to make comparative or background references to obesity rates and

6        surgical procedures that address fat and obesity as long as such references

7        do not equate the efficacy of Lipozene® with surgical procedures;

8      •   continue to make statements referring to the existence of scientific evidence

9        and clinical studies that support the efficacy of glucommanan products, so

10       long as the dosage instructions are consistent with the dosage shown to be

11       effective as stated in Section IV.B.1.

12  DATED: September 23, 2010               **KIRTLAND & PACKARD LLP**

13

14                                 By:

15                                     Michael Louis Kelly<br>Behram V. Parekh

16                                   **NEWPORT TRIAL GROUP**

17

18                               By:

19                                     Scott J. Ferrell

20                                     **MILSTEIN, ADELMAN &<br>KREGER LLP**

21

22                               By:

23                                     Paul D. Stevens<br>Ryan J. Clarkson

24                                   *Counsel for Plaintiffs*

25

26                             By:

27                                     Ana Claudia C. Guedes

28                                 *Counsel for Defendants*

-9-

EXHIBIT 6 (PAGE 47)

# EXHIBIT 7



1 Michael Louis Kelly - State Bar No. 82063
mlk@kirtlandpackard.com
2 Behram V. Parekh - State Bar No. 180361
bvp@kirtlandpackard.com
3 Heather M. Baker - State Bar No. 261303
hmb@kirtlandpackard.com
4 KIRTLAND & PACKARD LLP
2041 Rosecrans Avenue
5 Third Floor
El Segundo, California 90245
6 Telephone: (310) 536-1000
Facsimile: (310) 536-1001
7
*Counsel for Plaintiff and all*
8 *others similarly situated*

9

10 **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

11 **COUNTY OF SANTA BARBARA**

12 DANIEL GARCIA, on behalf of himself and all ) Case No.:1402915
others similarly situated,
13 ) Assigned to the Hon. Denise de Bellefeuille
Plaintiff,
14 ) **CLASS ACTION**
v.
15 ) **PLAINTIFF'S OPPOSITION TO KEVIN**
IOVATE HEALTH SCIENCES U.S.A. INC., a ) **BRANCA'S MOTION TO INTERVENE**
16 Delaware corporation, and DOES 1-10,
inclusive, ) Hearing date: February 21, 2013
17 ) Time: 8:30 a.m.
Defendants. ) Department: SB6
18 )
) Complaint file: July 20, 2012
19 ) Trial Date: None set
)
20 )

21

22

23

24

25

26

27

28

02342-00001 157108.01

**EXHIBIT 7 (PAGE 48)**

1    concerns regarding notice, Mr. Garcia was apprised of Kirtland & Packard's co-counsel relationships

2    with Newport Trial Group once Kirtland & Packard received notice of Newport Trial Group's

3    representation of Iovate in the litigation. Mr. Garcia, as the proposed class representative, understood

4    and evaluated the situation, and concluded that such relationships did not present a conflict. As to

5    absent class members, they, too, can be notified of the relationship as part of the notice process, and

6    can choose to opt-out or object at the appropriate time, as can Mr. Branca. No intervention by Mr.

7    Branca is necessary to preserve anyone's rights at this time.

8        Further, there can be no question that the abilities of Kirtland & Packard, and its track record

9    in representing clients in complex litigation, makes it more than adequate to represent the class.

10    Kirtland & Packard is a full service law firm founded in 1932 specializing in complex litigation, class

11    action, and mass tort. The lead attorneys from the firm on this matter, Michael Louis Kelly and

12    Behram V. Parekh, personally also bring a wealth of class action litigation experience to this matter.

13    Mr. Kelly is a senior partner with Kirtland & Packard. Mr. Kelly has practiced with the firm for his

14    entire legal career spanning over 30 years, and has concentrated his trial practice in product liability,

15    consumer class actions and business litigation. He has tried many types of cases to successful jury

16    verdict, including obtaining a record setting individual discrimination verdict of $63.9 million dollars

17    in the PrivatAir case in 2005. He has worked tirelessly to expand consumer protections. In the

18    Indochina International case, Mr. Kelly obtained a multi-million dollar verdict against several

19    insurance companies when they conspired to provide their insured a defense, but then wrongfully filed

20    a declaratory relief action against their insured, to attempt to reduce the money they paid to injured

21    third parties. This case created a new form of insurer liability to insureds.

22        Mr. Parekh is of counsel to Kirtland & Packard and has been litigating complex securities and

23    consumer class actions for his entire 17 year career. He has acted as lead or co-lead counsel in

24    numerous complex class action and mass tort cases, including taking complex litigation through trial

25    and appeal. He is also a graduate of the Straus Institute for Dispute Resolution's Alternative Dispute

26    Resolution program, which gives him a considerable advantage in effectively advocating the interests

27    of his clients and the putative class in arbitrations and mediations, as well as understanding the

28    dynamics of mediations, and how to use the mediation process to effectively settle complex cases.

KIRTLAND & PACKARD LLP
LAW OFFICES

02342-00001  157108.01        -5-

**EXHIBIT 7 (PAGE 49)**